[Civ. No. 20124. Second Dist., Div. One. Oct 25, 1954.]

SQUARE DEAL MACHINE COMPANY, INC. (a Corporation), Respondent, v. THE GARRETT CORPORATION (a Corporation), Appellant.

Norman Dale Kull for Appellant.

W. M. Freiburghouse and Richard A. Perkins for Respondent.

MOSK, J. pro tem.*—Appellant corporation appeals from an adverse judgment, after trial by jury in the court below, and maintains it should have prevailed as a matter of law under the attendant circumstances.

Respondent corporation, which we shall call Square Deal, operated a machine shop in South Gate, county of Los Angeles, for precision lathe and milling machine production. Appellant corporation, hereinafter referred to as Garrett, operated a plant and a retail sales and supply department in Vernon, also located in the county of Los Angeles. The companies were well known to each other through previous commercial intercourse.

Square Deal had received a $51,500 subcontract to perform machining operations on 500 elevating screws destined for the Army Ordnance Department. In order to meet specifications and to cut two threads to an inch on a lathe theretofore capable of cutting only as low as four threads, it became necessary to replace the standard gear assembly consisting of an 18-tooth gear with a 36-tooth gear.

*Assigned by Chairman of Judicial Council.

On April 25, 1952, Philip Greathead, president of Square Deal, telephoned Garrett and ordered "one 36-tooth . . . 16-pitch gear" and a 72-tooth gear. He then wrote out a purchase order on his letterhead, and dispatched an employee, John Collins, with the order to pick up the two gears. Collins presented the order to Robert E. Dick, sales engineer for Garrett, and was given two gears wrapped in a paper bag. Neither party counted the teeth on the gears. Dick wrote out, initialed and presented to Collins a receipt for two gears, identified by catalogue number, and Collins signed it. On the instrument Collins acknowledged delivery to him of a "G.B. 72 gear" and a "G.B. 36 gear." Testimony of Dick indicated these referred to a "Boston" 72-tooth gear and a "Boston" 36-tooth gear, but he conceded on cross examination that the number following the letters does not always signify the quantity of teeth.

Greathead received the bag from Collins, he did not note the marking on the gear and he did not count the teeth before installing the new gear train in place of the 18-tooth gear. He checked the first elevating screw threaded on the re-assembled lathe, both visibly and with what instruments were available. Satisfied that the lathe was cutting two threads to the inch, he proceeded with the operation. Two Army Ordnance inspectors spot-checked the subsequent production and approved it for shipment. After the lathe had threaded 166 pieces during some 15 days, respondent routinely ran one of them through another machine to clean up some roughness, and discovered an accumulation of error amounting to 1/32 per inch over the 22-inch length of the threaded portion of the elevating screw. Investigation then revealed for the first time that the gear contained only 35 teeth. The ultimate result was rejection and scrapping of the 166 pieces, and corresponding financial loss to Square Deal.

At the trial, Square Deal recovered a judgment in the sum of $8,267, and from it Garrett appeals, contending first that Square Deal may not prevail as a matter of law since it failed in a legal duty to examine the gear delivered to determine if it filled the contract; second, Square Deal's inspection after installation of the gear was faulty and should have revealed the error before 166 screws had been improperly threaded; third, certain errors in jury instructions were made by the trial court; and fourth, the damages were excessive.

At the outset it must be understood that there was no substantial conflict over erroneous delivery of a 35-tooth gear.

Garrett's employee had no independent recollection of the transaction, and therefore did not deny respondent's testimony concerning the error. That this improper delivery constituted negligence seems incontrovertible. Appellant does question, however, whether that negligent act was the proximate cause of respondent's damage and whether respondent was not guilty of contributory negligence as a matter of law in failing to inspect the gear and to discover the disparity in teeth between the ordered and the delivered article.

■ Generally speaking, when personal property is tendered or delivered to a purchaser in fulfillment of a contract or order for the purchase thereof, the duty devolves upon him to make an examination of the property tendered or delivered for the purpose of determining whether it fills the contract, and if from such examination he finds it does not, he must promptly reject it. ■ This duty of inspection for the purpose of determining whether the property complies with the contract must be exercised within a reasonable time, and what is a reasonable time depends upon the circumstances of each particular case. (*Jackson* v. *Porter Land & Water Co.*, 151 Cal. 32, 39 [90 P. 122].)

In Jackson recovery by the purchaser was denied, but the factual situation is distinguishable. There the party had contracted for an engine of certain horse-power; it was installed with lesser horse-power; the purchaser had knowledge of that fact and with such knowledge commenced and continued his irrigation operations, not until conclusion of the season raising any question concerning the proper equipment.

Appellant relies upon *Pacific Commercial Co.* v. *Greer*, 129 Cal.App. 751, 757 [19 P.2d 543], as authority to the effect "The general rule is that in order to excuse the lack of inspection upon the part of the buyer, it must be wholly impracticable. (55 Cor. Jur. 720.) The buyer cannot relieve himself on the ground that the examination will occupy time or that it may be attended with inconvenience and labor." But in that case each of the orders contained a specific written requirement that the rope should be inspected by a third party, and, said the court (p. 756), "Where parties to a contract agree that the quality of the thing sold shall be determined by a particular person, such determination is conclusive on the parties. . . ." In *Imperial Gas Engine Co.* v. *Auteri*, 40 Cal.App. 419 [180 P. 946], an engine was purchased for a specified purpose. The court required no examination of the engine, but permitted the purchaser to prevail where the defects were not discovered until after installation and trial.

In *Sherman* v. *Ayers*, 20 Cal.App. 733 [130 P. 163], the contract provided that operation of the machinery should constitute acceptance. Nevertheless, said the court (p. 736), "the whole of the operation, either by the employees of plaintiff's assignors, or by defendant after they left, was in an effort to procure, if possible, information as to any existing defects, and to determine whether or not the same could be made to operate. The evidence does not disclose such an operation as, under the authorities cited, constitutes an acceptance."

The buyer's right of inspection includes a reasonable time within which to make it, and imposes on him the duty to make it within that time after the goods have been received or tendered for acceptance; what is reasonable being a question of fact dependent upon the circumstances of each case, the situation of the goods, the nature of the business and the customs of the trade. (Mechem on Sales, § 1377.)

■ If the buyer receives goods into his possession and fails to inspect them within a reasonable time after he has had opportunity to do so, he thereby loses the right to complain of their condition, and is thereafter to be treated as having assented to take or keep title to the goods. In the early cases it seems to have been assumed that the time to inspect the goods was as soon as they were offered to the buyer; but it later became apparent that goods were often of such a character or so packed that immediate examination was impossible and that testing or opening the packages was essential. The courts have allowed the buyer, under these circumstances, a reasonable time to make the examination. No more definite rule can be laid down than that such a time is permitted as is reasonable, having regard to nature of the goods and all the circumstances of the case. (Williston on Sales, 2d ed. § 476.)

Appellant would have us hold here as a matter of law that respondent's agents should have examined the gears immediately, counted the teeth, and discovered the defect. However, Civil Code, section 1767, contemplates "a reasonable opportunity of examining them for the purpose of ascertaining whether they are in conformity with the contract." ■ What constitutes a reasonable opportunity is always a question of fact to be determined according to the reasonable man standard by the trier of fact, in this case a jury.

■ To approach the matter in another way, no cause of action is presented if the buyer had superior or equal knowledge as to the identity of the article sold. If the seller can show that the buyer accepted the goods with actual knowledge

that they did not conform to the order of purchase, he establishes an invincible defense to the buyer's action. (*Gratz* v. *Schuler*, 25 Cal.App. 117, 121 [142 P. 899].) But without noteworthy exception the cases hold that whether or not the buyer had actual knowledge, or as a reasonable man should have acquired such knowledge, is a question for the trier of fact. That was the holding in *Firth* v. *Richter*, 49 Cal.App. 545 [196 P. 277], where trees represented by the seller to be Valencias were first actually selected by the complaining buyer. So, too, was the same result reached in *Brock* v. *Newmark Grain Co., Inc.*, 64 Cal.App. 577 [222 P. 195], in which the several parties who purchased what was represented to be Sonora wheat saw the seed in the warehouse. In *South Bend Pulley Co.* v. *W. E. Caldwell Co.*, 21 Ky. 1084 [54 S.W. 12, 13], certain pulleys were ordered, and when received were wrapped in paper. Some were not unwrapped until the time the suit came to trial, but the court did not hold this barred recovery.

It seems, therefore, that the test is not merely whether the purchaser laid eyes upon the object, but whether he had knowledge of the nonconformity to specification, or if he did not, were the circumstances such as required him, as a reasonable man, to have acquired such knowledge. Whether the purchaser here had or should have had such knowledge cannot be determined as a matter of law. It is clearly a factual problem, and we cannot say the jury and trial judge erroneously read the weight upon the evidentiary scales.

 Where the evidence is in dispute or more than one conclusion reasonably may be drawn from the evidence, questions as to the inspection of the goods are for the jury. (77 C.J.S. p. 960.) The fact that there was evidence which would have also justified a contrary conclusion merely requires the application of the rule that where there is a substantial conflict in the evidence, the decision of the trial court upon the facts is binding upon the reviewing court. (*Moss* v. *Smith*, 181 Cal. 519, 520 [185 P. 385].)

Evidence was received of the custom employed in machine shops of checking against the blueprint the first articles run from the assembled gear train. To some extent both parties have referred to custom, and compliance with or variance from it to support their respective conclusions. Custom is an element to be considered. But the law is clear that conformity to custom in the trade does not conclusively eliminate negligence or contributory negligence as a matter of law, and conversely, failure to adhere to custom does not

establish negligence or contributory negligence. The conduct of the parties in relation to custom in the trade is also a question for the jury to consider along with all other facts and circumstances. (*Polk* v. *City of Los Angeles,* 26 Cal.2d 519, 531 [159 P.2d 931].)

 Appellant contends the court erroneously instructed the jury that "Where there is a contract to sell or a sale of goods by description, there is an implied warranty by the seller that the goods shall correspond with the description." This is a correct recital of the law (Civ. Code, § 1734) but, maintains appellant, it is inapplicable since in this case there was not sale by description but a sale *in praesenti.*

While the court did not instruct the jury that as a matter of law this was a sale by description, the evidence would fully justify it having done so. The order was telephoned by Greathead and subsequently reduced by him to descriptive writing. The role of Collins was clearly that of a mere messenger, with authority not to inspect and approve, but only to deliver the written order to Garrett and the ordered objects back to Square Deal. *Byrne* v. *Jansen,* 50 Cal. 624, is not controlling in this situation. There the purchaser received an express solicitation to inspect the wool involved, but declined to do so at the time of purchase and neglected to do so after delivery. Under such circumstances, held the court, the maxim *caveat emptor* applied.

 It would be a harsh rule, indeed, if we were to hold as a matter of law that no warranties were to be implied in a purchase transaction where the purchaser's mere messenger had an opportunity of cursory inspection over the counter before he accepted the merchandise for delivery to his employer. Suffice it to say that a seller may not be so readily insulated from his legal responsibilities.

 Appellant next complains of the failure of the court to instruct the jury that "if, after acceptance of the goods, the buyer fails to give notice to the seller of the breach of any promise or warranty within a reasonable time after the buyer knows, or ought to know of such breach, the seller shall not be liable therefor." This, too, is a correct statement of the law (Civ. Code, § 1769) and should have been given.

That the buyer, after receiving the goods, has retained them without objection for an unreasonable period is the most frequent defense of the seller who argues an implied acceptance, says Mechem (§ 1380). What time may be deemed a reasonable one is a question of fact to be determined

by the jury in view of all the circumstances of the case. (§ 1381.) To the same effect is *Whitfield* v. *Jessup,* 31 Cal. 2d 826 [193 P.2d 1].

We cannot hold, however, in this instance the omission of this instruction constitutes reversible error. Notice of breach of warranty to the seller did not in any way affect liability for negligence, for by the time of discovery of the missing gear tooth, the damage had been suffered. An instruction in the language of Civ. Code, § 1769, could be crucially significant in a case involving perishable objects, where the seller should have a timely opportunity of reexamining the goods allegedly defective. But here we have no substantial question of the improper gear being delivered, and whether the seller was informed immediately or after a brief delay could not be determinative of the issues. Whether the purchaser ought to have known of the breach, mentioned in a clause in the instruction, is adequately covered under general instructions on the subject of negligence and contributory negligence, all of which were thoroughly rendered by the trial court.

Appellant next complains of the admission into evidence of a brass spur gear, which while designated G-113 had only 112 teeth. This was to demonstrate that the number, as in G-36, does not necessarily indicate the quantity of teeth. The exhibit was properly admitted.

Finally appellant insists the damages are excessive and not supported by the evidence. He bases his argument on the assertion that respondents did not explain satisfactorily why no inspection was made from piece No. 36—the last examined by the Army Ordnance men—to piece No. 166. Had the damage stopped at the 36th item, the loss would have been 36 times $51.50 or $1,854. That type of argument might well have been made to the jury as the trier of fact, but we cannot accept it as a basis for reversing a judgment rendered on conflicting evidence. There was substantial evidence in the record to justify the jury's figure of $8,267. Upon its negligence theory, respondent was entitled to reasonable compensatory damages, whether or not they could have been anticipated. (Civ. Code, § 3333.)

The judgment is affirmed.

White, P. J., and Drapeau, J., concurred.

A petition for a rehearing was denied November 15, 1954, and appellant's petition for a hearing by the Supreme Court was denied December 22, 1954.