Wanda C. GILMORE and Joe Lee Gilmore,
Petitioners,

v.

ST. ANTHONY HOSPITAL, a corporation,
and Oklahoma City Community Blood
Bank, Inc., a corporation, Respondents.

No. 46507.

Supreme Court of Oklahoma.

Oct. 30, 1973.

Lampkin, Wolfe, Burger, Abel, Mc-Caffrey & Norman by Ed Abel, Oklahoma City, for petitioners.

Rhodes, Hieronymus, Holloway & Wilson by William H. Wilson, Oklahoma City, for respondent, St. Anthony Hospital, a corp.

Fenton, Fenton, Smith, Reneau & Moon by Elliott C. Fenton, Oklahoma City, for respondent, Okla. City Community Blood Bank, Inc., a corp.

BARNES, Justice.

This action was instituted in this Court by a Petition for Certiorari to review a certified Interlocutory Order under 12 O.S. 1971, § 952(b)(3), and Rules 1.50 to 1.56, both inclusive, of the Rules of Appellate Procedure in Civil Cases, 12 O.S.1971, Ch. 15, App. 2.

By the complained of portion of said order, the District Court sustained paragraph 3 of a separate demurrer that respondent, Oklahoma City Community Blood Bank, Inc., filed, as a defendant, to the plaintiff's petition in said Court's Cause No. CJ–71–2945, entitled "Wanda C. Gilmore and Joe Lee Gilmore, Plaintiffs, vs. St. Anthony Hospital, a corporation, and Oklahoma City Community Blood Bank, Inc., a corporation, Defendants." For clarity and brevity, we will hereinafter refer to petitioners herein by name, or by the collective appellation of "plaintiff" they were given in that petition.

According to their petition in that case, the Gilmores [husband and wife] are seeking damages against the Hospital and Blood Bank for alleged personal injuries Mrs. Gilmore received, including her contraction of hepatitis, as a result of a transfusion she received at said Hospital of blood furnished by the Blood Bank.

Paragraph 3 of the defendant Blood Bank's demurrer denied that the Gilmores were "entitled to maintain a cause of ac-

tion based upon warranty . . . " because of 63 O.S.1971, § 2151, which provides, among other things, that the distribution and use of whole blood for the purpose of tranfusing it into a human body "for compensation or otherwise shall be deemed a transaction . . . ", and further that:

" * * *

"No such transaction shall give rise to any *implied* warranty of the fitness, quality, suitability of, purpose, safety, acceptability to the body of the patient or of any other characteristic or circumstance incident to the transaction involved bearing upon the propriety of the transaction, or applied to the recipient, on the part of the person or persons rendering such service, *in the absence of negligence.* * * * " [Emphasis added.]

The essence of plaintiff's petition is contained in the following allegations:

" * * *

"(b) Defendant sold and supplied blood to plaintiff for the purpose of transfusion and treatment when defendants knew or should have known that said blood was not fit for transfusion and treatment. (c) Defendants failed to test the aforesaid blood to determine if it was, in fact, fit for transfusion and treatment at a time when defendants knew or should have known that without such testing plaintiff was likely to be injured. (d) *Defendants warranted and represented to plaintiffs and contracted with plaintiffs* and each other for the benefit of plaintiffs and each other that the blood in question would be safe and proper for the purposes of transfusion and treatment, when in fact, said blood was not safe and proper for transfusion and treatment. (e) Defendants knew or should have known that plaintiff was likely to be injured as a result of the supplying of the aforesaid blood in its aforestated condition. (f) Defendants failed to warn plaintiffs in any manner

of the defective blood when defendants knew or should have known of said defective blood. (g) Plaintiffs relied upon *the warranties and representations made by defendants as aforesaid in the purchase of said blood* and relied upon defendants' skill and judgment to furnish suitable blood for the purposes of transfusion and treatment when, in fact, defendants failed to provide blood which was proper for the purposes of transfusion and treatment. (h) Defendants *misrepresented* to plaintiffs the quality of blood that would be furnished as aforesaid. (i) The aforesaid blood was not merchantable nor fit for its intended use. " * * * " [Emphasis added.]

While, as above shown, plaintiff's petition in Cause No. CJ–71–2945 did not mention the term "implied warranty" or contain any other phraseology to unequivocally show that the cause of action it purported to allege was based upon that kind of a warranty, instead of an express one, the District Court's order sustaining the relevant paragraph of defendant's demurrer contains the following additional recital:

"IT IS FURTHER ORDERED, ADJUDGED AND DECREED by the Court that it is the intention of the Court by this ruling to strike from the plaintiff's petition all allegations with regard to an alleged breach of an *express or implied* warranty of fitness in this cause and *to allow the plaintiff to plead nad prove only a cause of action for negligence* in furnishing blood to the plaintiff. . . . " [Emphasis added.]

Therefore, despite the above indicated interpretation by the District Judge of his own order [whose journal entry bears the signed approval of the attorneys for all of the parties] because of the positions the parties have taken in this Court, we will assume for the purpose of this opinion, that plaintiff bases her cause of action upon defendant's implied warranty that the blood was fit for the purpose for which it was furnished; otherwise, we

would have to ignore the parties' arguments about "implied warranty" and be compelled to hold that the trial court erred in sustaining paragraph 3 of defendant's demurrer and, in effect, ruling out of the case allegations of express warranty to which the statute cited therein does not purport to pertain. Objective recognition that, under the statute, a cause of action on implied warranty is not maintainable without negligence, should not tend to induce a conclusion that plaintiff's petition does not allege a cause of action based on an express warranty. And, as to the rule for determining whether a petition withstands a demurrer, see Neff v. Jones, Okl., 288 P.2d 712, Abbott v. Shannon, 182 Okl. 151, 76 P.2d 1067, and other cases digested in 11A Okl.Dig., Pleadings, ☞204(3).

■ Under her Proposition I, plaintiff maintains that she should be able to proceed to trial on the theory she refers to as "Strict Liability in Tort". Although she says that "this question was not specifically ruled upon by the trial court . . . .", she requests that we "clarify . . . [her] right to proceed to trial on the issue of strict liability in tort". We think these statements induce an incorrect and confusing interpretation of the trial court's order, which, in effect, ruled that plaintiff's action was *not* maintainable against defendant *in the absence of negligence* on its part. Thus, said order was tantamount to ruling that plaintiff could not maintain her action on the theory of strict liability, which is just another name for "liability without fault", or, in other words, "absolute liability" [irrespective of negligence]. In this connection, see 52 Am.Jur., Torts, § 17. While we are not unaware of distinctions [referred to by plaintiff] between present day strict liability cases and many past products liability cases, in both categories of cases the foundation stone of plaintiff's cause of action is a theoretically implied warranty. See Greenman v. Yuba Power Products, 59 Cal.2d 57, 27 Cal.Rptr. 697, 377 P.2d 897, 901, 13 A.

L.R.3d 1049, 1955. It is therefore our opinion that under the trial court's order, as well as *under the provisions of Section 2151*, supra, *a cause of action making a blood bank strictly liable* [i. e., liable without negligence] for injuries from defects in the blood it furnishes, *is barred*, or unauthorized, *by statute*.

■ Plaintiff's argument under her Proposition III is based upon the premise that the trial court's order was the result of his interpretation of Section 2151, supra, as forbidding an action for damages for breach of an *implied warranty* "even where negligence can be shown. . . . ." If that is the way the court interprets said statute, we agree that he is ignoring important language therein, since the basis of the duty, which the defendant, in such cases, is charged with failing to perform, lies in the theory of an implied contract of warranty of suitability and fitness. Until there is a breach of this implied contract of warranty, there is no failure or breach of duty. As we read it, Section 2151, supra, says that it is only in cases where the defendant has *negligently* failed to perform this duty or breached such implied contract, that he will be liable for the consequences thereof. If the breach of warranty has occurred without negligence on his part, then, under the statute, plaintiff has no cause of action; but, without an implied warranty, there can be no duty for the defendant to be negligent in failing to discharge. Therefore, to the extent that the trial court's order may have been intended to prevent plaintiff from alleging and proving a cause of action against defendant for negligently breaching an implied warranty [that the blood it furnished was suitable for transfusion into a human body], said order is ambiguous, and must be modified in its interpretation or language. Accordingly, plaintiff's petition for certiorari is granted to the extent that said order might be applied, otherwise than as herein indicated.

Under her Proposition II, plaintiff contends that if Section 2151, supra, "has been properly interpreted by the trial court . . . .", it discriminates against, and does not afford equal protection under the 14th Amendment of the United States Constitution to, purchasers of blood, as is afforded [under the law generally] to purchasers of mechanically made, or manufactured, products. Both because the trial court's order does not unequivocally show on its face that said court has interpreted said statute correctly, and because, on the basis of the record before us, it does not appear that any question of said statute's constitutionality was raised, or specifically dealt with, in that court, or certified to this Court, we reserve decision on this question. In this connection, see State ex rel. Department of Highways v. Gosselin, Okl., 493 P. 430, 433, Petitioners of School District No. 9 v. Jones, 193 Okl. 9, 12, 140 P.2d 922, 925, and 5 Am.Jur.2d, Appeal and Error, § 873.

In accord with the foregoing, the petition for certiorari is granted, and the trial court's order sustaining paragraph 3 of defendant's demurrer is reversed insofar as it presents an obstacle to plaintiff's alleging and proving a cause of action based upon the theory that defendant has negligently breached an implied warranty in the situation described in her trial court petition. [Since, as we read Section 2151, supra, it does not obviate the existence of an implied warranty in sales of blood for human transfusion, but does no more than allow recovery against the warrantor *for his negligence* in breaching such warranty, defendant's demurrer's paragraph 3, citing said statute, raises no question as to the existence of such a warranty.] As to other respects in which the trial court's order may be considered as questioned herein, said order is affirmed.

WILLIAMS, V. C. J., and IRWIN, BERRY, LAVENDER, SIMMS and DOOLIN, JJ., concur.