GEORGE GLASS, Adm'r of the Estate of Carolyn Glass, Deceased, Plaintiff-Appellant, *v.* INGALLS MEMORIAL HOSPITAL *et al.,* Defendants-Appellees.

(No. 60164; )

First District (5th Division)—September 12, 1975.

Karlin and Fleisher, of Chicago (Barry M. Woldman, of counsel), for appellant.

Crooks and Gilligan, of Chicago (Kendal A. Crooks and John W. Gilligan, of counsel), for appellee Scientific Blood Bank, Inc.

Lord, Bissell & Brook, of Chicago (Harold L. Jacobson, Williams P. Dorr, and Thomas W. Dempsey, of counsel), for appellee Ingalls Memorial Hospital.

Mr. JUSTICE DRUCKER delivered the opinion of the court:

This action was brought to recover damages for the wrongful death of plaintiff's decedent. The complaint charged that defendants were strictly liable in tort for the sale and distribution of blood which was "defective and unreasonably dangerous." Defendants moved to dismiss the complaint on the ground that the action was barred by chapter 91, sections 181 *et seq.* of the Illinois Revised Statutes. (Ill. Rev. Stat. 1973, ch. 91, par. 181 *et seq.*) The court below granted defendants' motions, and plaintiff appeals, contending that these statutes violate the prohibi-

tion against special legislation contained in article IV, section 13, of the Illinois Constitution of 1970.

Plaintiff's complaint was predicated solely upon the doctrine of strict liability in tort. Count I alleged that plaintiff's decedent had been a patient at defendant, Ingalls Memorial Hospital, in December 1971, that "as part of the services rendered to Plaintiff's decedent," the hospital sold her blood for purposes of transfusion, that this blood was "defective and unreasonably dangerous" thereby causing her to contract serum hepatitis and that as a result of this disease she died on March 6, 1972. Count II of the complaint alleged that defendant, Scientific Blood Bank, Inc., sold and distributed to the hospital the defective and unreasonably dangerous blood which was given to plaintiff's decedent. Both defendants filed motions to dismiss, claiming that plaintiff's cause of action was barred by recently enacted "blood legislation" (Ill. Rev. Stat. 1973, ch. 91, par. 181 *et seq.*). Plaintiff in answer to these motions argued that these statutory provisions were unconstitutional. The trial judge rejected plaintiff's constitutional attack and granted defendants' motions to dismiss. He gave leave to plaintiff to file an amended complaint "based upon ordinary negligence."

OPINION

In a landmark 1965 decision the supreme court in *Suvada v. White Motor Co.*, 32 Ill.2d 612, 210 N.E.2d 182, held that manufacturers of products whose defective condition makes them unreasonably dangerous are strictly liable to the user or consumer who is injured as a proximate result of the defective condition, and it is not necessary to show that the manufacturer was negligent. Five years later the court applied the *Suvada* doctrine to a factual situation similar to the one at bar. In *Cunningham v. MacNeal Memorial Hospital*, 47 Ill.2d 443, 266 N.E.2d 897, the plaintiff sought damages on a theory of strict liability on the ground she contracted serum hepatitis as the result of a blood transfusion administered at the defendant hospital. The court held at page 447 that "[w]hile whole blood may well be viable, human tissue, and thus not a manufactured article of commerce, we believe that it must in this instance be considered a 'product' in much the same way as other articles wholly unchanged from their natural state which are distributed for human consumption" and therefore ruled that the plaintiff's complaint adequately stated a cause of action on the theory of strict tort liability.

In response to *Cunningham*[1] legislation was enacted stating, in part,

---

[1] The Governor's Approval Message states that "[t]he necessity for this legislation was brought about, in part, by the recent Illinois Supreme Court decision Cunningham v. MacNeal Memorial Hospital, 47 Ill.2d 443 (1970)." See Ill. Ann. Stat. ch. 91, § 181 (Smith-Hurd 1973 Supp.).

that whole blood, plasma and blood derivatives distributed for transfusion are to be considered, for purposes of liability in tort, a service and not a sale even if remuneration is paid, and that strict tort liability is not applicable to such transactions. (See Ill. Rev. Stat. 1973, ch. 91, par. 182.)[2] Plaintiff contends that this legislation has immunized the class of persons selling blood for transfusions from the burden of strict tort liability imposed upon all other merchants selling all other goods in Illinois and therefore violates the constitutional prohibition against special legislation.

Article IV, section 13, of the Constitution of 1970, provides that "[t]he General Assembly shall pass no special or local law when a general law is or can be made applicable. Whether a general law is or can be made applicable shall be a matter for judicial determination." Plaintiff argues that in *Cunningham* the supreme court has already made the judicial determination that for purposes of strict tort liability sellers of blood should be treated in the same manner as all other merchants. We disagree.

The issue before us is totally different from the one presented in *Cunningham.* There the supreme court was merely asked to decide whether, in the absence of any legislation to the contrary, the *Suvada* rule applied to the distribution of blood. As noted above, its decision prompted the legislature to enact section 181 *et seq.* The issue before us is whether this enactment violates article IV, section 13, of the Illinois Constitution. Clearly *Cunningham* bears, at most, only tangentially on our determination of the constitutionality of a statute enacted subsequent to its issuance.

The supreme court has provided us with well-established guidelines for determining whether a statute violates the constitutional prohibition against special legislation. In *People ex rel. Vermilion County Conservation District v. Lenover,* 43 Ill.2d 209, 217-18, 251 N.E.2d 175, it held:

> "Establishing classifications is primarily a legislative function. [Citations.] Classifications made by the legislature need not be logical, harmonious, scientific or even accurate, provided they will accomplish the legislative design and are not arbitrary. [Citation.] Only if it can be said that the classification is clearly unreasonable

---

[2] Ill. Rev. Stat. 1973, ch. 91, par. 182, provides:

"The procuring, furnishing, donating, processing, distributing or using human whole blood, plasma, blood products, blood derivatives and products, corneas, bones, or organs or other human tissue for the purpose of injecting, transfusing or transplanting any of them in the human body is declared for purposes of liability in tort or contract to be the rendition of a service by every person, firm or corporation participating therein, whether or not any remuneration is paid therefor, and is declared not to be a sale of any such items and no warranties of any kind or description nor strict liability shall be applicable thereto * * *."

and palpably arbitrary will a court declare the statute invalid. [Citations.] And 'A distinction in legislation is not arbitrary if any state of facts can reasonably be conceived that would sustain it, * * *.' [Citations.] Summarizing, a legislative classification is sustainable where founded upon a rational difference of situation or condition existing in persons or objects upon which the class rests, and where there is a reasonable basis for the classification in light of the objects and purposes to be accomplished. [Citations.]" See also *People ex rel. City of Salem v. McMackin*, 53 Ill.2d 347, 364, 291 N.E.2d 807; *McRoberts v. Adams*, 60 Ill.2d 458, 462-63, 328 N.E.2d 321.

Furthermore, it is to be presumed that before enacting the instant classification, the legislature surveyed the conditions existing in the state and pursued the various means available to it but not available to the judiciary. (See *People v. Palkes*, 52 Ill.2d 472, 288 N.E.2d 469.) We will not nullify a legislative classification merely on the ground that our judgment differs from that of the General Assembly (*Maloney v. Elmhurst Park District*, 47 Ill.2d 367, 265 N.E.2d 654) for it is well established that the determination of what is in the public interest is primarily to be made by the legislature in the exercise of its police power. (See *People ex rel. Gutknecht v. City of Chicago*, 3 Ill.2d 539, 121 N.E.2d 791; *Cremer v. Peoria Housing Authority*, 399 Ill. 579, 78 N.E.2d 276.) In addition we note that all reasonable doubts as to constitutionality "are to be resolved in favor of upholding the validity of a statute." *Delany v. Badame*, 49 Ill. 2d 168, 171, 274 N.E.2d 353.

The legislative enactment challenged by plaintiff contains an explicit finding and declaration of public policy that:

"The availability of scientific knowledge, skills and materials for the purpose of injecting, transfusing or transplanting human whole blood, plasma, blood products, blood derivatives and products, corneas, bones, or organs or other human tissue is important to the health and welfare of the people of this State. The imposition of legal liability without fault upon the persons and organizations engaged in such scientific procedures inhibits the exercise of sound medical judgment and restricts the availability of important scientific knowledge, skills and materials. It is therefore the public policy of this State to promote the health and welfare of the people by limiting the legal liability arising out of such scientific procedures to instances of negligence or willful misconduct." Ill. Rev. Stat. 1973, ch. 91, par. 181.)

This legislative declaration is buttressed by the apparent unavailability of a test to discover the presence of serum hepatitis virus in blood or other human organs. The absence of such a test has been cited by the

courts of many of our sister States as justification for their refusal to impose strict tort liability on the distributors of blood. (See, *e.g.*, *Shepard v. Alexian Brothers Hospital Inc.* (1973), 33 Cal. App. 3d 606, 109 Cal. Rptr. 132; *Hines v. St. Joseph's Hospital* (1974), 86 N.M. 763, 527 P.2d 1075.) We note that 43 States have enacted legislation to limit the liability of doctors, hospitals and blood banks in blood transfusion cases.

We are aware that in *Cunningham* the court rejected an argument that hospitals should be shielded from strict tort liability on the ground that due to the absence of a test for serum hepatitis virus, blood might properly be classified as an "unavoidably unsafe" product. However, the court, in discussing the strict tort liability of not-for-profit hospitals, stated at page 452 that it saw "no good reason for engrafting, *judicially,* an exception in their favor onto the strict tort liability theory * * *." (Emphasis supplied.) We must presume that the General Assembly has since studied the situation and determined that the health and welfare of the people of this State would be adversely affected by the imposition of strict liability. We note that it was predicted at the time *Cunningham* was handed down that the imposition of liability without fault on the distributors of blood would cause the cost of transfusions to skyrocket. (See Note, *Strict Liability for Disease Contracted from Blood Transfusion*, 66 Nw. U. L. Rev. 80 (1971).) Moreover, implicit in the legislature's declaration of public policy is the fear that the imposition of strict tort liability would cause the financial considerations arising out of increased exposure to tort litigation to impinge on the exercise of sound medical judgment in a field where an individual's life might be at stake. Such possible legislative motives are sufficient to justify the instant statutory classification.

We do not believe that the granting of a statutory exemption to the distributors of human tissue for the purpose of injection, transfusion and the like from the general rule holding merchants and manufacturers strictly liable in tort for defects in their products to be unreasonable or arbitrary. We therefore hold that section 181 *et seq.* is not violative of the constitutional proscription on special legislation and, accordingly, affirm the judgment entered below dismissing plaintiff's complaint.

Affirmed.

LORENZ and SULLIVAN, JJ., concur.