Wanda G. GILMORE and Joe Lee Gilmore, Appellants,

v.

ST. ANTHONY HOSPITAL, a corporation, and Oklahoma City Community Blood Bank, Inc., a corporation, Appellees.

No. 48947.

Supreme Court of Oklahoma.

July 24, 1979.

Rehearing Denied Sept. 10, 1979.

Ed Abel, Oklahoma City, for appellants.

Dale Reneau, Fenton, Fenton, Smith, Reneau & Moon, Oklahoma City, for appellee Oklahoma City Community Blood Bank, Inc.

IRWIN, Vice Chief Justice.

Appellants, Wanda G. Gilmore and Joe Lee Gilmore, sought to recover damages for injuries allegedly sustained by Mrs. Gilmore from a blood transfusion while a patient at St. Anthony Hospital. Mrs. Gilmore allegedly contracted hepatitis from blood furnished by appellee, Oklahoma City Community Blood Bank, Inc. (Blood Bank).

This cause was first presented to this Court on a Certified Interlocutory Order in *Gilmore v. St. Anthony Hospital, et al.*, Okl., 516 P.2d 248 (1973), where we construed 63 O.S.1971, § 2151,[1] and held that it is necessary to establish negligence before liability may be imposed against a blood bank for furnishing unfit blood.[2]

Further proceedings were had in the trial court. Appellees' Motion for Summary Judgment was sustained and appellants appealed. Appellants dismissed their appeal against St. Anthony Hospital leaving Blood Bank as the only appellee.

On assignment to the Court of Appeals the order of the trial court was affirmed on the theory that a written disclaimer[3] at-

1. 63 O.S.1971, § 2151, inter alia, provides: "The procurement, processing, distribution or use of whole blood, plasma, blood products, blood derivatives * * * shall be deemed a transaction * * *. No such transaction shall give rise to any implied warranty of fitness, quality, suitability of purpose, * * * in the absence of negligence."

2. According to *St. Luke's Hospital v. Schmaltz*, Colo., 534 P.2d 781 (1975) forty-four states had adopted statutes which in effect preclude the imposition of legal liability without fault in blood transfusion cases.

3. The label attached to the blood stated: "Warning: No laboratory test is available to determine the presence of the virus of hepatitis is present. No warranties are made or created. Warranties of fitness or merchantability are excluded."

tached to the blood furnished Mrs. Gilmore was sufficient under 12A O.S.1971, § 2–316(2) to exclude an implied warranty of fitness. Appellants seek certiorari.

The act of negligence relied upon by appellants relates to the source of the blood that Blood Bank furnished, i. e., Blood Bank obtained its blood, at least in part, through a paid-donor system. Appellants contend that the evidence shows that the use of a paid-donor system, as opposed to the voluntary-donor system, subjects the recipient of the blood (Mrs. Gilmore) to a greatly increased risk of hepatitis and this fact has been recognized for a number of years by the people in the blood banking business.[4] Appellants argue Blood Bank should have been using a voluntary-donor system and it was negligent in continuing to use the paid-donor system.

The evidence establishes that the incidence of hepatitis is higher in blood obtained through a paid-donor system than a voluntary system. According to deposition testimony, this is "mainly because the paid donor * * * probably needs the money, and it may well be the type of individual that is taking drugs, or so needs the money in order to support his habit, and as a result, he has a higher exposure to hepatitis." Although the testimony shows that the donor in the case at bar was a paid-donor, there is no evidence that such donor was or was not the type of individual that would fall within the class of a high-risk "exposure to hepatitis", and if he were, Blood Bank should or should not have ascertained such fact.

Undisputed depositional testimony discloses that at the time the blood was furnished no laboratory tests were available to determine the presence of the virus of hepatitis, except in an experimental laboratory. The director of the Blood Bank testified that everything it did was done "under our National Institute of Health Licensing, the United States Governmental licensing, and also, the American Association of Blood Banks Certification, which involves everything from the time the donor comes in, until the blood is used." According to the director, "we check your (donor's) temperature, your pulse, your blood pressure, your hemoglobin, and in the laboratory, we do an ABO Group, an Rh, which is done twice for different methods, a DU, a serology, and an antibody, checking for antibodies, before the blood is used."

█ The first issue presented is whether the written disclaimer was sufficient to exclude an implied warranty of fitness. Blood Bank has cited no decisional law and has not given any cogent reasons why it is entitled to sustention of its summary judgment based on the disclaimer. Its argument is that appellants offered no testimony to show that the warning was inadequate and not in compliance with the statute. Blood Bank's argument fails to recognize that on motion for judgment there can be no trial of fact issues since its function is to determine whether there are any genuine issues as to material facts. Such motion should therefore be denied if under the evidence reasonable men might reach different conclusions from undisputed facts. *Flick v. Crouch*, Okl., 434 P.2d 256 (1967).

█ There are no factual circumstances presented which would permit a summary judgment based on a conclusion that this written disclaimer was sufficient to exclude an implied warranty of fitness in favor of appellants. The only evidence was that the warning was on the "label of the blood". Certiorari granted.

Appellants do not contend that it is negligent per se to obtain blood from a paid-donor, but do contend that obtaining blood from a paid-donor because of the high risk involved, may constitute negligence and in the case at bar there were material issues of fact to be resolved and the trial court erred in sustaining Blood Bank's motion for summary judgment.

---

**4.** In response to a depositional question relating to the difference between the incidence of hepatitis in a voluntary-donor system as opposed to a paid-donor system, the response was: "It may run as high as ten percent in the paid-donor system, as opposed to one to two or three percent in a non-paid, voluntary system."

It is somewhat difficult to ascertain Blood Bank's position because it presents no evidence elicited by it at the depositional hearings. However, it appears that Blood Bank's position is that there were no tests available to determine the presence of hepatitis and obtaining blood through the paid-donor system does not constitute negligence. It argues there are no genuine issues as to material facts relating to its negligence because there was no evidence of negligence.

In *Hines v. St. Joseph Hospital,* 86 N.M. 763, 527 P.2d 1075 (1974), the evidence showed that the incidence of hepatitis infection was greater under the paid-donor system than the voluntary system and it was contended that the blood bank was negligent in using the blood of paid donors because of the higher risk involved. There was evidence that the blood of a paid-donor was used. The Court of Appeals of New Mexico found that the blood bank had met all the required standards and had acted with due care; concluded there was no genuine issue as to any material fact as to the negligence of the blood bank; and held that the trial court properly granted the blood bank's motion for summary judgment.

It is apparent the majority of the Court of Appeals of New Mexico made no distinction between the paid-donor system and the voluntary system where the blood bank had met the required standards and acted with due care, but the majority opinion did cite *Hutchins v. Blood Services of Montana,* 161 Mont. 359, 506 P.2d 449 (1973), which said the evidence submitted did not place in issue the higher risk of using paid-donors. It was contended in *Hutchins* the blood bank was negligent in using paid-donors where the evidence showed that prisoners, drug addicts, derelicts and skid row bums, who are prone to exchange blood for mon-

ey, carry a high risk of hepatitis. The *Hutchins* court said that the evidence showed that the paid donor did not fall within the category of a dangerous donor and the risk of using paid donors was not applicable. The Court was of the opinion that everyone who sells his blood is not a high risk donor and "it is not negligent to offer to buy blood, when a blood bank finds that it is the only way it can meet its obligations". A dissenting opinion was premised on the theory that the facts indicated the paid-donor was in fact in the high risk category and if any inquiries had been made by the blood bank, the paid donor might not have been allowed to sell her blood.

Some courts have held that since (at the time here involved) there were no reliable methods available for determining the presence of serum hepatitis virus, that blood fell within the category of an "unavoidable unsafe product" and was not unreasonably dangerous or a proper subject for application of the doctrine of strict liability in tort under section 402A of the Restatement (Second) of Torts.[5] *Brody v. Overlook Hospital,* 127 N.J.Super. 331, 317 A.2d 392 (1974); and affirmed on certiorari, 66 N.J. 448, 332 A.2d 596 (1975). In 1977, the New Jersey Court in *Moore v. Underwood Memorial Hospital,* 147 N.J.Super. 252, 371 A.2d 105, citing the *Brody* decision with approval, held that blood is an "unavoidably unsafe product" within the terms of Restatement of Torts 2d, § 402A, Comment K, and as such is not unreasonably dangerous, and a seller thereof is not to be held strictly liable in tort for serum hepatitis contracted from its use. In *Moore,* it was argued that *Brody,* where the blood was obtained from volunteers, was not applicable to commercial blood banks who use paid donors. The court rejected this argument and said; "Whether a product qualifies as "unavoid-

---

**5.** Section 402A of the Restatement (Second) of Torts: "(1) One who sells any product in a defective condition unreasonably dangerous to a user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if (a) the seller is engaged in the business of selling such product, and (b) it is expected to

reach the user or consumer in the condition in which it is sold. (2) The rule stated in subsection (1) applies although (a) the seller has exercised all possible care in the preparation and sale of his product, and (b) the user or consumer has not bought the product from or entered into any contractual relation with the seller."

ably unsafe" is to be determined by the nature of the substance. As far as the doctrine of strict liability in tort or breach of warranty are concerned, the source of the substance is simply not relevant." Moore also argued that he was entitled to submit his case to the jury because an inference of negligence could reasonably be drawn from the fact that the paid-donor had "a past social and medical history which makes it likely that serum hepatitis had its source in his blood" and that the blood bank operated for profit and utilized procedures less effective than those used by the Red Cross. In upholding the summary judgment in favor of the commercial blood bank the Court found that the record disclosed that the paid-donor "gave blood on many prior occasions and there is no record of any other incident resulting from a transfusion involving his blood, either before or after the donation at issue here." It also found that the blood bank employed the same testing and screening procedures as used by the Red Cross.

In *Cunningham v. MacNeal Memorial Hospital*, 47 Ill.2d 443, 266 N.E.2d 897, 45 A.L.R.3d 1353 (1970), the court refused to recognize the exceptions to the rule of strict liability and held the hospital liable for injuries from unfit blood. The Court said that the exceptions under Comment K, "Unavoidably Unsafe Products", within the terms of 402A of the Restatement (Second) of Torts, related only to products which are not impure and such exception is not applicable where the product is impure.

*Cunningham* was discussed in *Glass v. Ingalls Memorial Hospital*, 32 Ill.App.3d 237, 336 N.E.2d 495 (1975), and said to be one of the reasons why the 1973 Illinois Legislature enacted statutes providing that strict liability in tort was not applicable to "blood" transactions. In *Glass*, plaintiff sought to impose strict liability for the sale and distribution of blood which was allegedly "defective and unreasonably" dangerous. The Court said that in response to the strict liability in tort imposed by *Cunningham*, "legislation was enacted stating, in part, that whole blood, plasma and blood derivatives, distributed for transfusion are to be

considered, for the purpose of liability in tort, a service and not a sale even if remuneration is paid, and that strict tort liability is not applicable to such transactions." The 1973 Illinois Legislative enactment contained explicit findings and declarations of public policy concerning the necessity of having blood available and that the health and welfare of the people would be adversely affected by the imposition of strict liability. The Appellate Court of Illinois affirmed the trial court's order granting the blood bank's motion to dismiss.

*Glass* does not disclose whether the defective and unfit blood was obtained from a paid-donor or a volunteer and the Court made no distinction between the two systems. We do note this language in the Illinois statute, "whether or not any remuneration is paid therefor" and such language was alluded to in the *Glass* decision as indicating the Legislature may have intended there be no distinction.

63 O.S.1971, § 2151, which relates to the procurement, processing, distribution or use of whole blood or blood products, was enacted in 1968. That statute contained a proviso that it "shall in no way be deemed to effect the operations of the Oklahoma State Penitentiary." In 1969, the Legislature authorized credit for blood donations by any person in this state convicted of a crime, who is serving time as a prisoner in the county jail. 57 O.S.1971, § 65. The same day that this 1969 enactment became effective (April 18, 1969), 63 O.S.1971, § 2152 also became effective. Section 2152 provides that any male person eighteen (18) years of age or older shall be eligible to donate blood voluntarily without obtaining parental permission, but that no male minor shall receive compensation for donating blood. All of the statutes were enacted and became effective prior to the furnishing of the blood in the case at bar and at a time when no laboratory tests were available to determine the presence of hepatitis, except in an experimental laboratory.

Our statutes contain no language relating to public policy concerning the necessity of

having blood available for the health of our people, but appellants did submit evidence tending to establish that sufficient blood would be available through a voluntary-donor system.

■ Granting credit to prisoners for blood donations and prohibiting minor males from receiving compensation for donating blood presupposes there was and would be paid-donors of blood, but the Legislature made no distinction between the two systems. Therefore, we will follow the general rule relating to tort liability.

The issue presented is whether reasonable men might reach different conclusions from the undisputed facts. *Flock v. Crouch*, supra. If they could not, the trial court correctly sustained Blood Bank's motion for summary judgment. If reasonable men could reach different conclusions, the trial court committed reversible error in sustaining the motion.

■ Blood Bank's argument that appellants failed to prove negligence on its part is misplaced. The burden was not upon appellants to prove Blood Bank was negligent in order to avoid Blood Bank's motion for summary judgment. However, the burden would have been upon appellants to show that evidence was available which would justify a trial of the issues if Blood Bank had introduced evidence indicating there was no substantial controversy as to one fact material to appellants' cause of action and this material fact was in Blood Bank's favor. *Runyon v. Reid*, Okl., 510 P.2d 943, 58 A.L.R.3d 814 (1973). As will be hereinafter shown, Blood Bank failed to introduce any evidence that shifted any burden to appellants.

The undisputed facts disclose that (1) the incidence of hepatitis is higher when blood is obtained through a paid-donor system than from a voluntary-donor system, (2) that a specific type or group of people, such as derelicts, are more prone to sell their blood than to donate it, and this group falls within a category of a dangerous or high risk donor, (3) the blood in the case at bar was obtained from a paid-donor, and no attempt was made to show the donor was not in the category of a dangerous or high risk donor, and (4) there were no reliable tests available to determine the presence of hepatitis.

■ Although there was evidence that tended to establish that Blood Bank met all the required standards and used reasonable care [6] (except as to screening and ascertaining if it appeared that the donor fell within the category of a dangerous or high risk donor) in obtaining and processing the blood in question, such evidence will not sustain a summary judgment in favor of Blood Bank. This is so because the blood was obtained from a paid-donor and Blood Bank made no attempt to show the donor did not fall within the category of a dangerous or high risk donor. To hold that such evidence would sustain the summary judgment would be tantamount to holding that the source of blood is immaterial and a blood bank may not be negligent in the selection or screening of its donors, even if it is apparent that the donor fell within the category of a dangerous or high risk donor. We do not hold that where it appears a donor is or may fall within the category of a dangerous or high risk donor, that obtain-

---

**6.** On appeal from Oklahoma N.D., the Tenth Circuit Court of Appeals in *Missouri-Kansas-Texas Railroad Company v. Ingram*, 322 F.2d 286, 290 (1963) said: "As a general rule customary methods do not furnish a test which is conclusive on the question of whether due care has been exercised. Conformity to such customary methods is merely a circumstance to be considered together with other circumstances in determining whether due care has been exercised."

In determining negligence, the standard is due care, and such standard is not fixed by custom, although failure to observe custom may be evidence of negligence, and custom, while it may assist in determination of what constitutes due care, is never a substitute for due care. *Sanders v. C. P. Carter Const. Co.*, 206 Okl. 484, 244 P.2d 822, 825 (1952). Conformity to custom in the trade does not conclusively establish either the presence or absence of negligence but is to be considered together with other evidence as a fact question for the jury. *Square Deal Machine Co. v. Garrett Corp.*, 128 Cal.App.2d 286, 275 P.2d 46, 52 A.L.R.2d 893 (1954).

ing blood from such donor constitutes negligence, but we do say, depending upon other factors which may be shown to exist, reasonable men might differ as to whether a blood bank in the selection of a donor, may have been negligent.

■ The fact that there were no reliable tests available to determine the presence of hepatitis, did not, as a matter of law, relieve Blood Bank from liability.

■ Appellants established that the incidence of hepatitis is higher when blood is obtained through a paid-donor system than through a voluntary-donor system, and the alleged defective blood was obtained from a paid-donor. When this case is tried, the burden will be upon appellants to establish that Blood Bank did not exercise reasonable care in the screening and/or selection of its donor. However, in considering Blood Bank's motion for summary judgment, such judgment was not proper if reasonable men might reach different conclusions as to whether Blood Bank used reasonable care in the screening and/or selection of its donor. The evidence relating to Blood Bank's degree of care is insufficient to sustain a motion for a summary judgment. This is, in actuality, the only fundamental issue presented. The other facts and circumstances under the record submitted are collateral to this issue on considering the summary judgment.

CERTIORARI GRANTED; DECISION OF THE COURT OF APPEALS VACATED; ORDER OF THE TRIAL COURT REVERSED; CAUSE REMANDED FOR FURTHER PROCEEDINGS.

LAVENDER, C. J., and WILLIAMS, HARGRAVE and OPALA, JJ., concur.

HODGES, SIMMS and DOOLIN, JJ., concur in part and dissent in part.

BARNES, J., dissents.

BARNES, Justice, dissenting:

While I can agree with much of the Majority Opinion, I cannot agree with the result reached in that opinion. In reversing the Summary Judgment granted to the Oklahoma City Community Blood Bank, the majority held that a material issue of fact was yet to be resolved. That issue is, whether the Blood Bank used reasonable means in screening its donors.

I do not believe we can legitimately base a reversal of the Summary Judgment on that issue, as it is not raised in the pleadings, nor was it raised in the briefs of the parties. Since it was not an issue in the case, the Blood Bank was not required to address it in order to be entitled to a summary judgment. To hold otherwise would put an untenable burden upon defendants, as it would require them to anticipate every possible act of negligence that could feasibly have led to an alleged injury, then present evidence that such acts had not occurred. For example, in the case before us, I think it is at least feasible that the blood could have been contaminated if a portion of the blood were spilled, then replaced. Yet, if such acts are not alleged, I do not think it incumbent upon a defendant to come in and prove that such never occurred. It puts the defendant in the position of having to imagine all possible negligent acts, and then negating them. Such a burden should not be placed upon a party, particularly in light of the fact that a plaintiff, who chooses to rely upon a particular act of negligence, can plead it, thus making it an issue in the case. I would hold such was not an issue and therefore the Blood Bank should not have been required to introduce evidence addressing that issue, in order to be entitled to its Summary Judgment.

The only argument made by Appellants on appeal is that the evidence introduced at trial, showing that blood was obtained from a paid donor, and that the incidence of hepatitis is higher in blood obtained from paid donors, was some evidence of negligence on the Blood Bank's part.

The unarticulated assumption underlying this argument is that it is negligent to obtain blood from a paid donor. Public policy alone would dictate that this analysis is unacceptable. Whether or not a donor is paid is not, in and of itself, an indicia of

unacceptability. Indeed, even the statistics relied upon by the plaintiffs indicate that approximately ninety per cent of all blood collected from paid donors is not contaminated with serum hepatitis. Rather, certain categories of individuals, who are more apt to donate blood for pay, are more likely to have contaminated blood than those not in the categories. In *Hutchins v. Blood Services of Montana, 161 Mont. 359, 500 P.2d 449 (1973),* the Supreme Court of Montana recognized three such categories, when they noted that prison inmates, bums, and addicts would all be dangerous donors. If the donors in the case before us were to fall in one of these groups, I would agree that evidence of negligence would be present. But the mere fact that the donor was a paid donor does not evidence any negligence.

Current automobile accident statistics indicate that there is a much higher rate of accident frequency among male drivers under the age of thirty. Yet, I do not believe that the entrustment of an automobile to a male who falls in that age group would be evidence of negligent entrustment. Rather, the issue in a negligent entrustment action would be centered around the attributes, habits, and reputation and the like of the particular party to whom the car was entrusted, and the care taken by the party entrusting the automobile. Likewise, the issue in the case before us should center around the particular donor in this case and the screening procedures used by the Hospital. The mere fact that the particular donor happens to fall into a statistical grouping, just as young male drivers do, is not evidence of negligence.

Unfortunately, these issues, which could have been viable issues in the case, were not raised by the plaintiffs in their petition or in their briefs. No argument was made that improper screening was present. Petitioners' sole argument was based upon their theory that the mere fact that a paid donor was involved was some evidence of negligence. As discussed above, such is not the case, for such an analysis is based upon an erroneous unarticulated assumption. Even if the assumption had some credence, we would again point out that it was not an issue raised in the case until late in the appellate stage, and therefore was not an issue which had to be addressed by the Blood Bank in order to obtain a summary judgment.

For these reasons, I cannot acquiesce in the Court's Majority Opinion. This being the case, I must respectfully dissent.