[No. D017758. Fourth Dist., Div. One. Oct. 13, 1994.]

JESUS HERNANDEZ et al., Plaintiffs and Appellants, v.
BADGER CONSTRUCTION EQUIPMENT COMPANY et al., Defend-
ants and Appellants;
NATIONAL STEEL AND SHIPBUILDING COMPANY, Intervener and
Appellant.

1792

## COUNSEL

Preston Easley for Plaintiffs and Appellants.

Streater, Murphy, Gernander, Forsythe & Telstad, Kent A. Gernander, Lincoln & Gustafson, Thomas J. Lincoln, Sullivan, Hill, Lewin & Markham and Candace M. Carroll for Defendants and Appellants.

Musick, Peeler & Garrett, Gerard Smolin, Jr., and Michael J. Hickman for Intervener and Appellant.

## OPINION

**KREMER, P. J.**—Plaintiffs Jesus Hernandez and his wife Mary Hernandez[1] appeal a judgment on their third amended complaint against defendants Carde Pacific Corporation (Carde) and Badger Construction Equipment Company (Badger) for damages for personal injury arising from Employee's on-the-job injury on the premises of his employer National Steel and Shipbuilding Company (NASSCO). Plaintiffs contend the court erred in reducing their noneconomic damages awards by 55 percent, representing the percentage of fault attributed to employer NASSCO. Plaintiffs also contend the court erred in determining defendants' liability for their noneconomic damages to be several rather than joint and several. We affirm the portions of the judgment challenged by plaintiffs.

Intervener NASSCO appeals the portion of the judgment declaring Carde was required to be named as an additional insured under NASSCO's general liability policy. Seeking reversal of that part of the judgment, NASSCO contends it named Carde as an additional insured only because of the mistaken belief—induced and fostered by Carde—that NASSCO was obligated to do so. We affirm the portion of the judgment challenged by NASSCO.

Defendant Carde appeals the portion of the judgment declaring NASSCO was not required to indemnify Carde for Carde's liability to plaintiffs. Carde

[1]For purposes of clarity, we refer to plaintiff Jesus Hernandez individually as Employee and plaintiff Mary Hernandez individually as Wife.

contends NASSCO was contractually obligated to indemnify Carde despite Carde's active negligence. We reverse the portion of the judgment challenged by Carde.

Defendant Badger appeals the portions of the judgment finding Badger liable to plaintiffs for negligence and declaring NASSCO's recovery of workers' compensation benefits paid to Employee under the federal Longshore and Harbor Workers' Compensation Act (Longshore Act) (33 U.S.C. § 901 et seq.) were not to be reduced by the percentage of fault attributed to NASSCO. Badger attacks the negligence finding as lacking substantial evidentiary support. Badger also contends the court should have reduced NASSCO's recovery by NASSCO's proportionate fault. We affirm the portions of the judgment challenged by Badger.

I

INTRODUCTION

Employee suffered economic and noneconomic damages arising from on-the-job injuries incurred in a crane accident on NASSCO's land. Wife suffered loss of consortium. NASSCO paid Employee workers' compensation benefits under the Longshore Act. The Longshore Act immunized employer NASSCO from suit by Employee and Wife.

In this action Employee and Wife sought and recovered damages from defendants crane lessor Carde and crane manufacturer Badger. In accord with Civil Code[2] section 1431.2, the court reduced plaintiffs' noneconomic damages awards against defendants by NASSCO's percentage of fault.[3] The court also concluded the liability of defendants Carde and Badger for plaintiffs' noneconomic damages was not joint but only several.

---

[2] All statutory references are to the Civil Code unless otherwise specified.

[3] Section 1431.2, subdivision (a)—enacted by Proposition 51 in 1986—provides: "In any action for personal injury, property damage, or wrongful death, based upon principles of comparative fault, the liability of each defendant for non-economic damages shall be several only and shall not be joint. Each defendant shall be liable only for the amount of non-economic damages allocated to that defendant in direct proportion to that defendant's percentage of fault, and a separate judgment shall be rendered against that defendant for that amount."

Section 1431.2, subdivision (b)(1), defines "economic damages" to mean "objectively verifiable monetary losses including medical expenses, loss of earnings, burial costs, loss of use of property, cost of repair or replacement, costs of obtaining substitute domestic services, loss of employment and loss of business or employment opportunities."

Section 1431.2, subdivision (b)(2), defines "non-economic damages" to mean "subjective, non-monetary losses including, but not limited to, pain, suffering, inconvenience, mental suffering, emotional distress, loss of society and companionship, loss of consortium, injury to reputation and humiliation."

NASSCO sought and recovered from Carde and Badger the amount of Longshore Act workers' compensation benefits paid to Employee. In adjudicating Badger's request for declaratory relief, the court declined to reduce NASSCO's recovery by the percentage of NASSCO's fault.

NASSCO and Carde also sought declaratory relief. In adjudicating those requests, the court concluded the amended crane rental contract between NASSCO and Carde required NASSCO to name Carde as an additional insured under NASSCO's liability policy. However, since the jury found Carde was actively negligent the court concluded NASSCO was not contractually obligated to indemnify Carde for Carde's liability to plaintiffs.

All parties appeal. We reverse the portion of the judgment declaring NASSCO was not obligated to indemnify Carde. We affirm the remainder of the judgment.

## II

### FACTS

Carde sold and leased construction equipment including mobile hydraulic cranes. In 1981 Carde bought a crane manufactured by Badger. Although Badger offered an "anti-two-blocking safety device" (ATBD) as an option on cranes, the crane bought by Carde did not have an ATBD. Badger furnished with the crane an operator's manual and a safety manual.

In October 1988 Badger made audio-visual ATBD's standard equipment on all its newly manufactured cranes.

NASSCO built and repaired ships at its 100-acre shipyard. In 1989 NASSCO owned at least 100 cranes.

In April 1989 a NASSCO crane broke down. NASSCO called Carde about renting a replacement crane. Carde owned about 30 cranes. On April 20, 1989, NASSCO entered into a written agreement with Carde (the Bare Rental Agreement)[4] to rent the ATBD-less crane Carde had bought new from Badger in 1981.[5] Carde did not order the ATBD option because Carde believed ATBD's to be undesirable, useless and unreliable.

---

[4] A "bare" rental agreement involves equipment only without providing an operator.

[5] The parties' Bare Rental Agreement's provision about indemnity and insurance stated: "HOLD HARMLESS—INSURANCE—User [NASSCO] shall hold Owner [Carde] free and harmless from and defend and indemnify [Carde] against any and all suits, actions, proceedings, claims, demands, liability, costs and charges, legal expenses, damages and penalties resulting,

At the time the Bare Rental Agreement was executed, Carde told NASSCO that Carde would require a certificate of insurance before delivering the crane. Carde sent NASSCO a document entitled "Insurance Requirements" requiring that Carde be named as an additional insured under NASSCO's general liability and property damage policies. NASSCO obtained a certificate naming Carde as an additional insured under NASSCO's general liability and property damage policies with Aetna Insurance Company. Upon receipt of the certificate of insurance, Carde delivered a crane to NASSCO.[6]

In May 1989—after NASSCO changed insurance companies—a new certificate of insurance was issued showing NASSCO's insurer as Lloyds of London and naming Carde as an additional insured. The Lloyds policy contained a $100,000 self-insured retention (deductible). The new insurance certificate did not mention the deductible and Carde was not otherwise informed of the deductible. Upon receiving the new insurance certificate, Carde delivered the Badger crane to NASSCO. Neither Badger nor Carde had retrofitted the crane with an ATBD.

Employee was a crane operator at NASSCO for more than eight years. On June 5, 1989, while working as a crane rigger giving direction signals to NASSCO's crane operator, Employee was injured on NASSCO's premises in an on-the-job accident involving the ATBD-less Badger crane bought by

---

or claimed to result, from injury or damage to any and all persons, employees and property in any way caused by [NASSCO] or any person acting for or in behalf of [NASSCO], occasioned by the use, maintenance, operation, handling, transportation or storage of the equipment during the rental term (including periods of loading, unloading and transportation), and [NASSCO] shall furnish and pay for Public Liability insurance with limits of $300,000, and Property Damage insurance with limits of $500,000 to protect [NASSCO] against any and all such liability and risk of loss. [NASSCO] shall indemnify and protect [Carde] against, and on demand shall pay to [Carde] in full for, any destruction or loss of or damage to the equipment howsoever caused during the rental term, and [NASSCO] shall furnish and pay for fire and extended coverage insurance to the full insurable value of the equipment for any and all loss or damage to the equipment occasioned by fire, theft, flood, explosion, overturn, accident, acts of God or any other cause that may occur during the rental term. The above insurance shall be in companies acceptable to [Carde] and [NASSCO] shall furnish certificates of such insurance in form acceptable to [Carde] within ten days from date, which shall provide that such insurance may not be cancelled without 30 days notice to [Carde] in advance. If [Carde] shall waive any requirement for any insurance as in this Agreement provided or if [NASSCO] for any reason does not obtain any such insurance, the failure to do so shall constitute an agreement by [NASSCO] to indemnify [Carde] against any and all loss which such insurance would otherwise have covered."

[6]The parties agreed Carde could supply another brand of crane as a temporary substitute because the Badger crane was not immediately available.

Carde in 1981 and leased to NASSCO.[7] The operator's manual and safety manual provided by Badger were in the crane's cab at the time of the accident.

NASSCO paid Employee $148,943.94 in workers' compensation benefits under the Longshore Act.

Before Employee's injury NASSCO did not object to carrying Carde as an additional insured on NASSCO's policies. For more than a year after the accident NASSCO permitted its insurer to treat Carde as an additional insured. Later NASSCO claimed it was never obligated to insure Carde.

## III

### SUPERIOR COURT PROCEEDINGS

### A

### *Pleadings*

Plaintiffs sued Carde and Badger for damages sustained by Employee in the crane accident and Wife's lost consortium. Plaintiffs' third amended complaint alleged causes of action for strict products liability, negligence, breach of warranty and loss of consortium. Plaintiffs asserted defendants were liable for failing to equip the crane with an ATBD and for failing to warn of the danger of operating the crane without an ATBD.

NASSCO as Employee's subrogee filed a complaint in intervention to recover from defendants Carde and Badger the amount of workers' compensation benefits paid to Employee under the Longshore Act. Later NASSCO amended its complaint in intervention to seek a declaration it did not have a duty to indemnify Carde under the Bare Rental Agreement.

Carde cross-complained against NASSCO for declarations that the Bare Rental Agreement required NASSCO to provide Carde with liability insurance, Carde was an additional insured under NASSCO's general liability policy, and NASSCO was required to pay the $100,000 deductible.

Badger cross-complained against NASSCO for comparative indemnity and declaratory relief. Badger effectively alleged NASSCO's recovery of

---

[7] The accident occurred when NASSCO's crane operator extended the crane's telescoping boom without lowering the auxiliary load line, thus causing the "headache" ball and hook assembly on the line to contact the boom tip. Such "two-blocking" created excessive stress on the line, causing it to break and drop the headache ball onto Employee.

workers' compensation benefits should be reduced by NASSCO's percentage of comparative fault. NASSCO successfully demurred to Badger's cross-complaint insofar as it involved Longshore Act benefits paid to Employee on the ground NASSCO's recovery of such benefits was not subject to reduction for NASSCO's comparative negligence.

B

*Trial*

In October 1991 plaintiffs' case and NASSCO's complaint in intervention were tried to a jury. Upon stipulation that all workers' compensation benefits paid by NASSCO to Employee were based on the federal Longshore Act, the court dismissed Badger's cross-complaint against NASSCO.[8] Later the court granted Carde's motion for nonsuit on plaintiffs' strict liability claims. At the close of evidence, plaintiffs and NASSCO asked the court to rule that section 1431.2 was not intended to limit a third party defendant's exposure where, as here, the jury found a lawsuit-immunized Longshore Act employer primarily responsible for an accident. Plaintiffs also asked the court to rule the federal supremacy cause prohibited applying section 1431.2. The court rejected those requests.

In November 1991 by special verdict the jury found: The crane did not have any design defect; defendants Carde and Badger were both negligent; the negligence of each defendant was a legal cause of the accident; Carde's negligence was active; both Employee and NASSCO were negligent with such negligence a cause of the injury; and without reduction for Employee's negligence the damages were $350,000 economic for Employee, $500,000 noneconomic for Employee, and $250,000 noneconomic for Wife. The jury also apportioned the parties' negligence: Employee 5 percent, NASSCO 55 percent, Carde 20 percent, and Badger 20 percent.

NASSCO and Carde submitted a joint stipulation of facts and separate statements of additional facts bearing on NASSCO's amended complaint in intervention and Carde's cross-complaint. The court granted Carde's request for declaratory relief, concluding NASSCO was obligated to name Carde as an additional insured and NASSCO was responsible for the $100,000 deductible. However, the court also concluded NASSCO was not obligated to indemnify Carde since Carde had been found to be actively negligent.

---

[8] As noted, the court earlier sustained NASSCO's demurrer to Badger's cross-complaint as to benefits paid under the Longshore Act on the ground NASSCO's recovery of such benefits was not subject to reduction for NASSCO's comparative negligence.

## C

### *Judgment*

In July 1992 the court entered judgment on the parties' various pleadings.

### 1

### *Plaintiffs' Case*

The court adopted the jury's findings that Employee sustained $350,000 economic damages and $500,000 noneconomic damages while Wife sustained $250,000 noneconomic damages. The court also adopted the jury's apportionment of fault: Employee 5 percent; NASSCO 55 percent; Carde 20 percent; and Badger 20 percent. Applying section 1431.2, the court found each defendant (Carde and Badger) was liable only severally—and not jointly—for its own 20 percent proportionate share of plaintiffs' noneconomic damages. Further, the court reduced Employee's award of economic damages from Carde and Badger by the $148,943.94 NASSCO paid to Employee (or on his behalf) under the Longshore Act. The court also reduced Employee's economic damages by his 5 percent fault.

Thus, the court concluded: Employee was entitled to recover $183,556.06 economic damages jointly and severally from Carde and Badger. Employee was entitled to recover $100,000 noneconomic damages separately from Carde and from Badger. Wife was entitled to recover $50,000 noneconomic damages separately from Carde and Badger.

### 2

### *NASSCO's Complaint in Intervention*

The court concluded NASSCO was entitled to recover from Carde and Badger jointly and severally the sum of $148,943.94, representing workers' compensation benefits NASSCO paid for Employee under the Longshore Act. The court also concluded since Carde was actively negligent NASSCO was not required to indemnify Carde for the amounts awarded to plaintiffs from Carde.

### 3

### *Carde's Cross-complaint*

The court declared NASSCO was obligated to name Carde as an additional insured on NASSCO's liability insurance. The court also declared

NASSCO was responsible for any policy deductible in effect on the date of Employee's injury.

4

*Badger's Cross-complaint*

As noted, the court dismissed Badger's cross-complaint against NASSCO.

IV

DISCUSSION

A

*Plaintiffs' Appeal*

 Plaintiffs contend the superior court should not have applied state law (section 1431.2) to reduce their noneconomic damages recoverable from defendants Carde and Badger by the percentage of employer NASSCO's fault while simultaneously applying federal law to NASSCO's workers' compensation lien. Plaintiffs also contend the court erred in applying section 1431.2 to Wife's claim for loss of consortium. We conclude the court correctly applied section 1431.2 to reduce plaintiffs' noneconomic damages including Wife's loss of consortium.

1

The Longshore Act immunized NASSCO from suit by plaintiffs. (33 U.S.C. § 905(a).) Thus, application of section 1431.2 to limit the liability of defendants Carde and Badger for plaintiffs' noneconomic damages to 20 percent each resulted in plaintiffs being unable to recover a portion of their noneconomic damages. Section 1431.2 intended that precise result. (*DaFonte* v. *Up-Right, Inc.* (1992) 2 Cal.4th 593, 603 [7 Cal.Rptr.2d 238, 828 P.2d 140].)

In *DaFonte* v. *Up-Right, Inc., supra,* 2 Cal.4th 593, the Supreme Court concluded section 1431.2's plain language eliminated "a third party defendant's joint and several liability to an injured employee for unpaid noneconomic damages attributable to the fault of the employer, who is statutorily immune from suit." (2 Cal.4th at p. 596.) "With respect to these noneconomic damages, the plaintiff alone now assumes the risk that a proportionate contribution cannot be obtained from each person responsible for the injury.

[Citation.]" (*Id.* at p. 600.) The court characterized Proposition 51's purpose as seeking to modify the "unfairness" and "inequities" of the former tort recovery system where defendants with slight fault could be "saddled with large damage awards mainly attributable to the greater fault of others who were able to escape their full proportionate contribution. [Citation.]" (*Id.* at p. 599.) The court noted section 1431.2's effect was "precisely that intended by the initiative: defendants no longer have to pay an injured employee's noneconomic damages caused by the fault of another, and the employee, like any other tort victim, bears the resulting risk of loss." (2 Cal.4th at p. 603.)

Seeking $475,000 noneconomic damages against defendants Carde and Badger jointly and severally, plaintiffs contend the holding in *DaFonte* v. *Up-Right, Inc., supra,* 2 Cal.4th 593, should not apply here because that case did not involve the Longshore Act. Plaintiffs contend federal maritime and statutory law—not section 1431.2—should govern the entire case including apportionment of their damages since under the Longshore Act employer NASSCO was insulated from paying its share of their damages and NASSCO's recoupment of workers' compensation benefits could not be reduced although its concurrent negligence contributed to Employee's injury. According to plaintiffs, federal law preempted state law and the supremacy clause forbade application of section 1431.2's doctrine of comparative fault to their noneconomic damages. Plaintiffs further contend *Schreefel* v. *Okuly* (1983) 143 Cal.App.3d 818 [192 Cal.Rptr. 402] held California doctrines of comparative fault do not apply to Longshore Act civil cases. However, we conclude California law required application of section 1431.2 here. Further, plaintiffs have not identified anything in federal law precluding such application of California comparative fault principles.

### 2

Citing *Edmonds* v. *Compagnie Generale Transatl.* (1979) 443 U.S. 256 [61 L.Ed.2d 521, 99 S.Ct 2753], plaintiffs note under federal law a defendant's share of noneconomic damages in a third party Longshore Act case may not be reduced based on the proportionate fault assessed against the employer.[9] Plaintiffs note the Supreme Court in *Edmonds* stated application of a proportionate fault rule could produce results unfavorable to the longshore

---

[9]In *Edmonds* v. *Compagnie Generale Transatl., supra,* 443 U.S. 256, the plaintiff longshore worker was injured on the job and received benefits under the Longshore Act from his stevedore-employer. (*Id.* at p. 258 [61 L.Ed.2d at pp. 525-526].) The longshore worker's exclusive remedy against his stevedore-employer was under the Longshore Act workers' compensation scheme. (*Id.* at p. 261 [61 L.Ed.2d at pp. 527-528].) In the longshore worker's federal court negligence lawsuit against the shipowner, the jury apportioned the longshore worker's fault at 10 percent, his stevedore-employer's at 70 percent, and the shipowner's at

worker not intended by Congress. (*Id.* at pp. 268-270 [61 L.Ed.2d at pp. 532-534].) Plaintiffs also assert Congress intended application of joint and several liability in Longshore Act cases without reduction for employer negligence. Thus, according to plaintiffs, their noneconomic damages should not be reduced by any proportionate fault of employer NASSCO.

Plaintiffs' reliance on *Edmonds* v. *Compagnie General Transatl.*, *supra*, 443 U.S. 256, is misplaced. In *Edmonds* the Supreme Court simply concluded the 1972 amendments to the Longshore Act were not intended to replace with a proportionate fault scheme the traditional admiralty rule that a defendant shipowner could be liable for all damages except those attributable to the plaintiff's own negligence. (*Id.* at pp. 258-260, 268-269, 271 [61 L.Ed.2d at pp. 525-527, 532-533, 534].)[10] The court also declined to change such judicially created admiralty rule so as to make the shipowner liable only for damages proportionate to its own negligence. (*Id.* at pp. 271-273 [61 L.Ed.2d at pp. 534-535].) However, nothing in *Edmonds* suggests the Longshore Act or judicially created admiralty law precludes application of state comparative fault doctrines in all cases involving payment of workers' compensation benefits under the Longshore Act. To the contrary, the court noted "Congress might have intended to adopt the existing maritime rule even for third-party actions under the Act that are not within the admiralty jurisdiction, though we need not and do not reach that issue today." (*Id.* at p. 273 [61 L.Ed.2d at p. 535].) The court also expressly noted its decision did "not necessarily have any effect on situations where [as here] the [Longshore] Act provides the workers' compensation scheme but the third-party action is not governed by principles of maritime law. [Citations.]" (*Id.* at p. 272, fn. 31 [61 L.Ed.2d at p. 535].)

Plaintiffs also cite *Dodge* v. *Mitsui Shintaku Ginko K.K. Tokyo* (9th Cir. 1975) 528 F.2d 669 for their contention federal law does not permit reduction here of longshore worker Employee's recovery from third party defendants Carde and Badger by the percentage of his employer NASSCO's

20 percent. (*Id.* at p. 258 [61 L.Ed.2d at pp. 525-526].) The Supreme Court held the award against shipowner was not to be reduced in proportion to the stevedore-employer's fault.

[10]The Supreme Court noted that under pre-1972 admiralty law "a longshoreman's award in a suit against a negligent shipowner would be reduced by that portion of the damages assignable to the longshoreman's own negligence; but, as a matter of maritime tort law, the shipowner would be responsible to the longshoreman in full for the remainder, even if the stevedore's negligence contributed to the injuries. This latter rule is in accord with the common law, which allows an injured party to sue a tortfeasor for the full amount of damages for an indivisible injury that the tortfeasor's negligence was a substantial factor in causing, even if the concurrent negligence of others contributed to the incident." (*Edmonds* v. *Compagnie Generale Transatl.*, *supra*, 443 U.S. at pp. 259-260 [61 L.Ed.2d at p. 560], fns. omitted.)

negligence. Asserting such reduction would impose unjustified burdens on the injured worker, plaintiffs contend equitable principles of fairness preclude application here of section 1431.2. However, plaintiffs' reliance on *Dodge* is inapposite since that case did not involve state law or preemption principles. Instead, the appellate court in *Dodge* simply rejected a third party defendant's request for imposition of a comparative fault system where Congress had not done so. (528 F.2d at p. 674.)[11] In sum, application of section 1431.2 to limit plaintiffs' opportunity to recover their full noneconomic damages does not contravene public policy.

Plaintiffs further contend under the federal supremacy clause the federal Longshore Act overrides California doctrines of comparative fault. Under California comparative fault law, an employer's recovery of state workers' compensation benefits paid is reduced when the employer is negligent. (*DaFonte* v. *Up-Right, Inc., supra,* 2 Cal.4th at p. 599; *Aceves* v. *Regal Pale Brewing Co.* (1979) 24 Cal.3d 502, 512-513 [156 Cal.Rptr. 41, 595 P.2d 619]; *Associated Construction & Engineering Co.* v. *Workers' Comp. Appeals Board* (1978) 22 Cal.3d 829, 842 [150 Cal.Rptr. 888, 587 P.2d 684].)[12] However, as we noted in *Schreefel* v. *Okuly, supra,* 143 Cal.App.3d 818, federal maritime law and the Longshore Act entitled an employer "to recover from the third party successfully sued by the employee the full measure of the compensation paid the employee" under the Longshore Act "without adjustment due to the comparative fault of the employer vis-à-vis the third

---

[11]In *Weidenfeller* v. *Star & Garter* (1991) 1 Cal.App.4th 1 [2 Cal.Rptr.2d 14], we rejected a contention that application of section 1431.2 would contravene public policy by limiting a plaintiff's opportunity to obtain full recovery. (1 Cal.4th at p. 7.) Citing *Evangelatos* v. *Superior Court* (1988) 44 Cal.3d 1188, 1198 [246 Cal.Rptr. 629, 753 P.2d 585], we stated: "The Supreme Court recently rejected similar arguments concerning section 1431.2 generally. [Citation.] In so ruling, the *Evangelatos* court recognized that a legitimate 'consequence of the statute . . . will be that persons who are unfortunate enough to be injured by an insolvent tortfeasor will not be able to obtain full recovery for their noneconomic losses, . . .' [Citation.]" (*Weidenfeller* v. *Star & Garter, supra,* 1 Cal.App.4th at p. 7.)

[12]Under California workers' compensation law, an employer cannot be sued in tort for an employee's work-related injury. Instead, regardless of fault the employer's sole liability is for workers' compensation benefits paid. The employee may sue any other responsible person for damages resulting from the injury. "In appropriate cases, the employer may also recoup workers' compensation benefits by means of reimbursement from the third party tortfeasor, a lien against the employee's third party tort recovery, or a credit against the tort judgment for benefits otherwise due to the employee in the future. [Citation.]" (*DaFonte* v. *Up-Right, Inc., supra,* 2 Cal.4th at p. 598.)

Before Proposition 51 California courts held ". . . an employee's damage judgment against third parties must be reduced by an amount attributable to the employer's proportionate share of fault, up to the amount of workers' compensation benefits paid. If the employer's share of fault exceeded the benefits paid or owed, its claim for reimbursement, lien, or credit should be denied. If the benefits paid or owed exceeded the employer's share of fault, the employer should recoup the excess only." (*DaFonte* v. *Up-Right, Inc., supra,* 2 Cal.4th at p. 599.)

party [citation]." (*Id.* at p. 822, citing *Edmonds* v. *Compagnie Generale Transatl.*, *supra*, 443 U.S. at pp. 271-273 [61 L.Ed.2d at pp. 534-535].) Thus, plaintiffs contend the same combination of admiralty law and Longshore Act law should entitle Employee to full recovery against each defendant here without reduction for the negligence of employer NASSCO. According to plaintiffs, since California comparative fault law cannot apply to reduce NASSCO's recoupment of workers' compensation benefits paid, such law should not apply to reduce Employee's noneconomic damages by NASSCO's proportionate negligence. Hence, plaintiffs assert the superior court here should have increased the liability of third party defendants Carde and Badger by the amount of employer NASSCO's negligence instead of reducing their recovery by the percentage of NASSCO's negligence.[13] In sum, plaintiffs contend application of federal law to NASSCO's workers' compensation lien and state law to their noneconomic damages led to a result most unfavorable to the injured parties. However, application of section 1431.2 here was correct under California law. Further, federal law did not preempt section 1431.2 and the supremacy clause did not forbid application of the statute to plaintiffs' noneconomic damages.

■ In analyzing section 1431.2, the California Supreme Court has stated: "*In every case*, it [the statute] limits the joint liability of every 'defendant' to economic damages, and it shields every 'defendant' from any share of noneconomic damages beyond that attributable to his or her own comparative fault. The statute contains no hint that a 'defendant' escapes joint liability only for noneconomic damages attributable to fellow 'defendants' while remaining jointly liable for noneconomic damage caused by others." (*DaFonte* v. *Up-Right, Inc.*, *supra*, 2 Cal.4th at p. 602, italics added, fn. omitted.) The court noted "section 1431.2 plainly limits a defendant's share of noneconomic damages to his or her own proportionate share of comparative fault. The statute states or implies no exception for third party suits by injured employees. No compelling reason appears to infer such an exception in derogation of the measure's literal words." (*Id.* at p. 604.) The court also noted nothing in the ballot materials favoring Proposition 51 "suggested a specific purpose to distinguish workers' compensation cases or other cases involving persons immune from suit." (*Id.* at p. 602, fn. 5.) Additionally, the court stated Proposition 51 "explicitly shifts to the injured

---

[13]According to plaintiffs, the court in *Edmonds* v. *Compagnie Generale Transatl.*, *supra*, 443 U.S. 256, acknowledged that an irreducible employer lien might create an inequity but held that the consequences of any such inequity should be borne by the third party tortfeasor rather than by the injured longshore worker. "Some inequity appears inevitable in the present statutory scheme, but we find nothing to indicate and should not presume that Congress intended to place the burden of the inequity on the longshoreman whom the Act seeks to protect." (*Id.* at p. 270 [61 L.Ed.2d at p. 533, fn. omitted.)

party some of the burden of noncontribution or undercontribution by some tortfeasors. No reason appears why injured workers alone should escape this effect." (*Id.* at p. 604, fn. 6.)

Plaintiffs' reliance on the preemption doctrine is unavailing because application of section 1431.2 here does not present an actual conflict with any substantive federal right created or guaranteed by Congress. (Cf. *English* v. *General Electric Co.* (1990) 496 U.S. 72 [110 L.Ed.2d 65, 110 S.Ct. 2270]; *Carlson* v. *Pacific Far East Lines* (1973) 29 Cal.App.3d 883, 888 [105 Cal.Rptr. 885].)[14] Plaintiffs have not identified any substantive federal right abridged by the superior court's application of section 1431.2. On the contrary, the record indicates plaintiffs' lawsuit was based on California tort and contract jurisprudence, not on any substantive rights granted under federal maritime or statutory law. Plaintiffs sued defendants Carde and Badger in state court under state law causes of action. Plaintiffs prevailed on state law theories and were awarded state law remedies. Although application of section 1431.2 resulted in reduction of plaintiffs' noneconomic damages, plaintiffs' right to such damages arose only under state law and not under federal law. Hence, section 1431.2 was not preempted since its application did not abridge any substantive federal right of plaintiffs.[15]

Plaintiffs misread *Schreefel* v. *Okuly, supra,* 143 Cal.App.3d 818, as holding California doctrines of comparative fault to be inapplicable in any civil case involving the Longshore Act. Our decision was not so broad. In *Schreefel* we simply held the supremacy clause prevented California's comparative fault system from abridging the substantive federal right granted to an employer to recoup Longshore Act workers' compensation benefits. (*Id.* at p. 825.) We did not hold that under all circumstances state laws based on comparative fault principles are preempted in any case involving the Longshore Act.

Finally, plaintiffs have not identified any injustice arising from applying section 1431.2 to limit their noneconomic damages under circumstances where federal law immunized NASSCO from suit and granted NASSCO the right to recover the amount of workers' compensation benefits paid to

[14]"[F]ederal demands upon state courts go no further than to require that substantive rights granted litigants under federal law shall not be abridged by the states. . . . [¶] Just as clear, however, is the premise that as to matters which in no way affect the substantive 'federal rights' of the parties, state law will be observed in state courts." (*Carlson* v. *Pacific Far East Lines, supra,* 29 Cal.App.3d at p. 888.)

[15]Although plaintiffs' lawsuit implicated NASSCO's federal right to recoup its Longshore Act workers' compensation benefits, such right was not abridged by applying section 1431.2 to plaintiffs' noneconomic damages.

Employee under the Longshore Act without reduction for its comparative fault.[16] Consistent with federal law, Employee's award of *economic* damages against defendants Carde and Badger jointly and severally was not reduced by NASSCO's percentage of fault—though properly reduced by the amount of workers' compensation benefits paid by NASSCO. Although NASSCO's negligence would have been considered under state comparative fault law, Employee's net recovery of economic damages from defendants would have been the same.[17] Hence, the varying treatment under federal and state law of the effect of NASSCO's negligence on recoupment of workers' compensation benefits did not ultimately affect Employee's *economic* damages award. Instead, NASSCO's negligence impacted only Employee's *noneconomic* recovery, but such result arose from section 1431.2 independently of whether federal or state law governed NASSCO's recovery of workers' compensation benefits. Thus, there was no impermissible inconsistency or inequity in applying federal law to employer NASSCO's recoupment of workers' compensation benefits while applying state law to Employee's recovery from third party tortfeasors Carde and Badger.

In sum, the superior court correctly held section 1431.2 applied to reduce plaintiffs' recovery of noneconomic damages from third party defendants Carde and Badger in proportion to employer NASSCO's fault.

3

■ Seeking recovery by Wife of her full $250,000 noneconomic damages jointly and severally from defendants Carde and Badger, plaintiffs contend by its own terms section 1431.2 did not apply to Wife's cause of action for loss of consortium since such claim was assertedly not "based on principles of comparative fault." Plaintiffs contend Wife's negligence was not compared to other parties' negligence and her recovery was not otherwise linked to any principle of comparative fault. According to plaintiffs, Wife's cause of action for loss of consortium was personal to her, not derivative from Employee's claim, and not subject to imputation of other parties' negligence. (*Rodriguez* v. *Bethlehem Steel Corp.* (1974) 12 Cal.3d

---

[16]We note under state workers' compensation law NASSCO would also have been immune from suit.

[17]Under California law, an employer's recovery of benefits is reduced in proportion to the employer's negligence and the employee's economic damages are reduced by the same amount. (Cf. *Witt* v. *Jackson* (1961) 57 Cal.2d 57, 71-72 [17 Cal.Rptr. 369, 366 P.2d 641].) On the other hand, while under federal maritime law an injured longshore worker's recovery against a negligent third party is not reduced by the percentage of fault attributed to the immunized employer, neither is the employer's recovery of compensation benefits reduced by its percentage of fault. (*Edmonds* v. *Compagnie Generale Transatl.*, *supra*, 443 U.S. 256; *Schreefel* v. *Okuly*, *supra*, 143 Cal.App.3d 818.)

382 [115 Cal.Rptr. 765, 525 P.2d 669]; *Lantis* v. *Condon* (1979) 95 Cal.App.3d 152, 156 [157 Cal.Rptr. 22].) Thus, plaintiffs conclude the superior court improperly extended Proposition 51 "beyond its statutory language." However, plaintiffs' contentions are without merit.

Section 1431.2 does not impute the negligence of any other party to Wife. Neither does the statute's reference to actions "based upon principles of comparative fault" require comparison of the plaintiff's negligence to that of other parties. Instead, the statute manifestly focuses on the comparative fault of multiple tortfeasors. Wife's cause of action for loss of consortium was "based upon principles of comparative fault" as it involved "independently acting tortfeasors who have some fault to compare." (Cf. *Rashtian* v. *BRAC-BH, Inc.* (1992) 9 Cal.App.4th 1847, 1851 [12 Cal.Rptr.2d 411].) Thus, since Wife's claim for loss of consortium was determined by comparing the fault of various tortfeasors, the superior court properly applied section 1431.2.

Further, section 1431.2, subdivision (b)(2), expressly includes loss of consortium in its definition of "non-economic damages." The Supreme Court has noted section 1431.2 "carefully" defines the "important distinction" between economic and noneconomic damages. (*DaFonte* v. *Up-Right, Inc., supra,* 2 Cal.4th at p. 600.) The court stated: "Proposition 51 thus retains the joint liability of all tortfeasors, regardless of their respective shares of fault, with respect to all objectively provable expenses and monetary losses. On the other hand, the more intangible and subjective categories of damages were limited by Proposition 51 to a rule of strict proportionate liability. With respect to these noneconomic damages, the plaintiff alone now assumes the risk that a proportionate contribution cannot be obtained from each person responsible for the injury. [Citation.]" (*Ibid.*) Further, as noted, section 1431.2 in "every case . . . limits the joint liability of every 'defendant' to economic damages, and it shields every 'defendant' from any share of noneconomic damages beyond that attributable to his or her own comparative fault." (2 Cal.4th at p. 602.)

Application of section 1431.2 to limit Wife's damages for loss of consortium was consistent with and indeed compelled by the statutory language. The superior court correctly concluded Wife's recovery of noneconomic damages for loss of consortium was limited to the proportionate fault of defendants Carde and Badger.

4

In sum, the superior court correctly applied California law to reduce plaintiffs' recovery of noneconomic damages by the percentages of fault

attributed to Employee and NASSCO, thus leaving third party defendants Badger and Carde liable for such damages only in proportion to their individual fault. As such, the portions of the judgment applying section 1431.2 to reduce plaintiffs' noneconomic damages must be affirmed.

B

NASSCO's APPEAL

■ NASSCO seeks reversal of the portion of the judgment declaring it was required to name Carde as an additional insured under NASSCO's general liability insurance policy and was responsible for any policy deductible in effect on the date of Employee's injury. NASSCO contends the superior court should have concluded NASSCO named Carde as an additional insured based only upon a mistaken belief fostered by Carde that NASSCO was obligated to do so. According to NASSCO, we should direct the superior court to enter a declaration NASSCO was not required to name Carde as an additional insured. We conclude the court reasonably determined NASSCO was obligated to name Carde as an additional insured and to pay any deductible.

1

After Carde and NASSCO submitted a joint stipulation and separate statements of fact, the court concluded NASSCO was required to name Carde as an additional insured on NASSCO's insurance policies. The court expressly found: The Bare Rental Agreement did not obligate NASSCO to provide insurance for Carde but simply required only that NASSCO provide insurance for itself for injuries arising from use of the crane; the Insurance Requirements sheet proposed modifying the Bare Rental Agreement to require NASSCO to name Carde as an additional insured on NASSCO's general liability and physical damage insurance policies; Carde refused to release the crane from its yard without the insurance certificate specified in the Insurance Requirements sheet; NASSCO complied with the modification terms and obtained the insurance certificate; no additional consideration was necessary to create an enforceable agreement because issuance of the certificate completed implementation of the modification; after April 20, 1989, Carde was an additional insured under NASSCO's policies; NASSCO knowingly agreed to name Carde an additional insured; no term of the modification was unclear or hidden from NASSCO; NASSCO's mistake was in assuming the Bare Rental Agreement required the certificate of insurance naming Carde as an additional insured; despite opportunity NASSCO's authorized agent did not read the Bare Rental Agreement before obtaining

the insurance certificate; and before Employee's injury NASSCO did not object to carrying Carde as an additional insured on NASSCO's policies.

2

NASSCO concedes the superior court correctly concluded that although the Bare Rental Agreement by itself did not obligate NASSCO to name Carde as an additional insured, the Insurance Requirements sheet was a proposed modification to the Bare Rental Agreement and no additional consideration was necessary because the modification was implemented when NASSCO obtained the Aetna certificate of insurance. However, NASSCO contends the court erred in concluding NASSCO consented to such modification, asserting such apparent consent was based on a mistake of fact, to wit, that the Bare Rental Agreement required NASSCO to provide a certificate naming Carde as an additional insured. NASSCO asserts Carde knew or had reason to know of such mistake and in fact fostered such mistake by transmitting its Insurance Requirements sheet to NASSCO. Attacking the court's conclusion NASSCO was not entitled to relief since NASSCO had the opportunity to read the Bare Rental Agreement before obtaining the certificate of insurance, NASSCO asserts on this record its failure to read the Bare Rental Agreement did not constitute a "neglect of a legal duty" under section 1577.[18] NASSCO also asserts Carde took advantage of NASSCO's immediate need for the crane. NASSCO further asserts Carde induced NASSCO's actions by falsely representing the Bare Rental Agreement required the certificate. According to NASSCO, granting its requested relief would not adversely affect Carde since Carde assertedly did not alter its own insurance coverage or otherwise detrimentally change its position in reliance on the issuance of a certificate of insurance naming Carde as an additional insured on NASSCO's policy. However, at trial NASSCO acknowledged whether NASSCO's providing Carde with certificates of insurance reflected NASSCO's consent to modification of the Bare

---

[18]Section 1577 provides:

"Mistake of fact is a mistake, not caused by the neglect of legal duty on the part of the person making the mistake, and consisting in:

"1. An unconscious ignorance or forgetfulness of a fact past or present, material to the contract; or

"2. Belief in the present existence of a thing material to the contract, which does not exist, or in the past existence of such a thing, which has not existed."

To rely on a unilateral mistake of fact, NASSCO had to demonstrate its mistake was not caused by its neglect of a legal duty. (*Architects & Contractors Estimating Service, Inc.* v. *Smith* (1985) 164 Cal.App.3d 1001, 1008 [211 Cal.Rptr. 45].) "Ordinary negligence does not constitute the neglect of a legal duty as that term is used in section 1577. [Citations.]" (*Ibid.*) Further, a party's unilateral mistake "is ground for relief where the mistake is due to the fault of the other party or the other party knows or has reason to know of the mistake. [Citation.]" (*Id.* at pp. 1007-1008; see also *Merced County Mut. Fire Ins. Co.* v. *State of California* (1991) 233 Cal.App.3d 765, 772 [284 Cal.Rptr. 680].)

Rental Agreement constituted a factual question for the court. NASSCO improperly seeks reweighing on appeal of the conflicting evidence presented at trial. Substantial evidence supports the court's factual finding favoring Carde. Thus, on this record the court reasonably denied NASSCO relief from the consequences of its mistaken assumption the Bare Rental Agreement itself required the certificate of insurance naming Carde as an additional insured.

3

■ Section 1636 requires the court to interpret a contract to give effect to the parties' intentions at the time of contracting. "The conduct of the parties after execution of the contract and before any controversy has arisen as to its effect affords the most reliable evidence of the parties' intentions. [Citations.]" (*Kennecott Corp.* v. *Union Oil Co.* (1987) 196 Cal.App.3d 1179, 1189 [242 Cal.Rptr. 403].) Thus, courts will adopt and enforce the parties' practical construction when reasonable. (*Crestview Cemetery Assn.* v. *Dieden* (1960) 54 Cal.2d 744, 753-754 [8 Cal.Rptr. 427, 356 P.2d 171]; *Universal Sales Corp.* v. *Cal. etc. Mfg. Co.* (1942) 20 Cal.2d 751, 761-762 [128 P.2d 665]; *Kennecott Corp.* v. *Union Oil Co., supra,* at pp. 1189-1190; *Western Medical Enterprises, Inc.* v. *Albers* (1985) 166 Cal.App.3d 383, 389 [212 Cal.Rptr. 434].)[19] ■ On this record the court reasonably concluded the contract's language and the parties' conduct before controversy arose demonstrated they intended that NASSCO name Carde as an additional insured on NASSCO's liability insurance as a condition of Carde's renting the crane to NASSCO.

NASSCO and Carde executed the Bare Rental Agreement providing NASSCO would hold Carde "free and harmless" from all liability "in any way caused by" NASSCO "occasioned by the use [of the crane]"; NASSCO would "furnish and pay for Public Liability insurance with limits of

---

[19]". . . 'Parties are far less liable to have been mistaken as to the intention of their contract during the period while harmonious and practical construction reflects that intention, than they are when subsequent differences have impelled them to resort to law, and one of them then seeks a construction at variance with the practical construction they have placed upon it. . . .'" (*Universal Sales Corp.* v. *Cal. etc. Mfg. Co., supra,* 20 Cal.2d at p. 762.)

A "'. . . practical construction placed upon the contract by the parties themselves . . . renders it immaterial to consider what might be the literal construction of its terms. Parties to a contract have a right to place such an interpretation upon its terms as they see fit, even when such an interpretation is apparently contrary to the ordinary meaning of its provisions.' [¶] This rule of practical construction is predicated on the common sense concept that 'actions speak louder than words.' . . . When the parties to a contract perform under it and demonstrate by their conduct that they knew what they were talking about the courts should enforce that intent." (*Crestview Cemetery Assn.* v. *Dieden, supra,* 54 Cal.2d at pp. 753-754.)

$300,000, and Property Damage insurance with limits of $500,000 to protect [NASSCO] against any and all such liability and risk of loss"; such insurance "shall be in companies acceptable" to Carde and NASSCO "shall furnish certificates of such insurance in form acceptable" to Carde; and if for any reason NASSCO "does not obtain any such insurance, the failure to do so shall constitute an agreement by [NASSCO] to indemnify [Carde] against any and all loss which such insurance would otherwise have covered." At the time the Bare Rental Agreement was executed, Carde told NASSCO that Carde would require a certificate of insurance before delivering the crane. Carde had a practice of requiring insurance certificates for all crane rentals. To be acceptable to Carde, an insurance certificate provided by an equipment renter had to identify Carde as an additional insured for general liability and property damage and could not have any general liability deductible. The purpose of those requirements was to ensure any equipment renter's insurer would protect Carde from all liability.

Carde provided NASSCO with an Insurance Requirements sheet indicating that a certificate "acceptable to Carde" meant a certificate naming Carde as an additional insured under NASSCO's general liability and property damages policies. Carde made it clear to NASSCO the crane would not leave its yard until receipt from NASSCO of the certificate of insurance specified in the Insurance Requirements sheet. Such requirement was not unclear or hidden from NASSCO. Without objection NASSCO obtained the required certificate naming Carde as an additional insured under NASSCO's Aetna policies. Despite opportunity NASSCO's authorized agent did not read the Bare Rental Agreement before obtaining the insurance certificate. Upon receipt of the certificate of insurance, Carde delivered a crane to NASSCO. Later NASSCO changed insurance companies and without objection provided Carde with a new certificate of insurance naming Carde as an additional insured under NASSCO's new Lloyds policy. Although the Lloyds policy contained a $100,000 deductible, the new insurance certificate did not mention the deductible and Carde was not otherwise informed of the deductible.[20] Upon receiving the new Lloyds insurance certificate, Carde delivered the Badger crane to NASSCO. Before Employee's injury NASSCO did not object to carrying Carde as an additional insured on NASSCO's policies. For more than a year after Employee's accident NASSCO permitted its insurer to treat Carde as an additional insured. Later NASSCO claimed it was never obligated to insure Carde.

As noted, NASSCO contends it provided the insurance certificates based upon its mistake of fact that the Bare Rental Agreement required it to

---

[20]Since NASSCO was contractually obligated to indemnify Carde for any failure to obtain the required insurance, NASSCO was liable for the $100,000 deductible.

name Carde as an additional insured. ■ However, generally ". . . one who assents to a contract cannot avoid its terms on the ground he failed to read it before signing it. [Citations.]" (*Izzi* v. *Mesquite Country Club* (1986) 186 Cal.App.3d 1309, 1318 [231 Cal.Rptr. 315].) ■ NASSCO acknowledges such duty to read ordinarily binds parties to terms included within a contract but asserts its failure to discover the absence of a term from the Bare Rental Agreement did not constitute neglect of a legal duty. NASSCO also asserts whether its failure to read the Bare Rental Agreement before signing it constituted neglect of a legal duty depended on whether Carde changed its position in reliance on NASSCO's mistake. (*Sun'n Sand, Inc.* v. *United California Bank* (1978) 21 Cal.3d 671, 701 [148 Cal.Rptr. 329, 582 P.2d 920].) Thus, according to NASSCO, its providing insurance certificates, accepting the cranes, and treating Carde as an additional insurer for a year after Employee's accident did not constitute either a manifestation of consent to the proposed modification or a practical construction of the contract. However, on this record the court reasonably resolved against NASSCO the factual issues bearing on the import of NASSCO's mistake.

In renting NASSCO a crane, Carde changed its position in direct reliance on NASSCO's providing certificates of insurance naming Carde as an additional insured based upon NASSCO's mistaken assumption the Bare Rental Agreement required it to do so. Further, NASSCO's mistake was not attributable to Carde. Carde customarily required acceptable insurance certificates for all crane rentals. Such insurance certificates, to be acceptable, were required to name Carde as an additional insured so as to ensure the equipment renter's insurer would protect Carde from all liability. When executing the Bare Rental Agreement, Carde told NASSCO that Carde would require a certificate of insurance before delivering the crane. Carde provided NASSCO with an Insurance Requirements sheet expressly indicating Carde was to be named as an additional insured. Carde told NASSCO the crane would not be released without the required insurance certificate. Such requirement was not unclear or hidden from NASSCO. NASSCO provided Carde with insurance certificates meeting Carde's requirements. NASSCO's later conduct before controversy arose reflected its intent the parties' contract required NASSCO to name Carde as an additional insured. Carde did not know NASSCO would later claim it had not read the contract or that a certificate naming Carde as an additional insured was not required.

On this record the court reasonably rejected NASSCO's request for relief from mistake and instead concluded that by providing the insurance certificates naming Carde as an additional insured NASSCO accepted the proposed contractual modification contained in the Insurance Requirements sheet. The

court also reasonably concluded NASSCO's provision of the certificates and later conduct affirming Carde as an additional insured constituted a practical construction of the contract's requirements.

4

Finally, NASSCO contends the court's conclusion NASSCO was not contractually obligated to indemnify Carde was inconsistent with—and thus precluded—a finding that Carde must be named as an additional insured under NASSCO's policies. NASSCO asserts the Bare Rental Agreement indicated Carde's intent in requiring NASSCO to provide insurance was simply to protect Carde in the event NASSCO should be required to indemnify Carde. Thus, according to NASSCO, since NASSCO was not called upon to indemnify Carde, Carde should not be allowed to take "a free ride on NASSCO's liability policy." In sum, asserting the issues of insurance and indemnity were "inextricably linked" and the contract's insurance clauses cannot provide greater protection to Carde than that provided by its indemnity clauses, NASSCO contends the superior court's assertedly correct conclusion it was not obligated to indemnify Carde compels a conclusion Carde was not entitled to the coverage of NASSCO's policy absent a duty to indemnify.

As we shall explain, the portion of the judgment declaring NASSCO was not required to indemnify Carde must be reversed. Such reversal undercuts the basis of NASSCO's contention of fatal inconsistency between the finding NASSCO had no indemnity obligation to Carde and the finding NASSCO must name Carde as an additional insured. Further, in any event, NASSCO's obligations to provide insurance to Carde and to indemnify Carde were not necessarily coextensive. (Cf. *Dart Transportation Service* v. *Mack Trucks, Inc.* (1970) 9 Cal.App.3d 837, 849-850 [88 Cal.Rptr. 670].) Unlike the situation in *Dart*, this record does not contain evidence Carde sought only limited coverage in requiring insurance from NASSCO. Instead, NASSCO simply argues the language of the Bare Rental Agreement itself would support an inference the insurance required by Carde was limited to the indemnity situation. However, since—as NASSCO concedes—its obtaining the certificate of insurance naming Carde as an additional insured implemented a modification of the Bare Rental Agreement, the superior court could properly reject the inference urged by NASSCO in favor of other reasonable inferences bearing on the meaning of the Bare Rental Agreement as modified.

5

In sum, on this record the superior court properly found NASSCO's mistaken assumption the Bare Rental Agreement required a certificate of

insurance naming Carde as an additional insured did not vitiate NASSCO's consent to the modified agreement because such mistake was attributable not to Carde but instead to NASSCO. Thus, the court correctly concluded NASSCO was required to name Carde as an additional insured and pay any deductible.

The portion of the judgment declaring NASSCO was required to name Carde an additional insured on NASSCO's liability insurance policy and obligated to pay any policy deductible must be affirmed.

## C

### *Carde's Appeal*

 Carde seeks reversal of the portion of the judgment declaring NASSCO was not required to indemnify Carde for Carde's liability to plaintiffs. Carde asserts the court should have enforced the parties' intent that NASSCO indemnify Carde for injuries resulting from NASSCO's use of the crane. We conclude the parties' agreement obligated NASSCO to indemnify Carde for the portion of the joint and several economic damage award to plaintiffs attributable to NASSCO's negligence that is ultimately paid by Carde.[21]

### 1

As noted, the Bare Rental Agreement provided: "User [NASSCO] shall hold Owner [Carde] free and harmless from and indemnify and defend Owner against any and all suits, actions, proceedings, claims, demands, liability, costs and charges, legal expenses, damages and penalties resulting, or claimed to result, from injury or damage to any and all persons, employees and property in any way caused by User or any person acting for or in behalf of User, occasioned by the use, maintenance, operation, handling, transportation or storage of the equipment during the rental term . . . ." Thus, the contract effectively provided NASSCO would indemnify Carde against any liability resulting from injury to Employee in any way caused by NASSCO and occasioned by use of the crane.

In the superior court, NASSCO contended it was not obligated to indemnify Carde since the jury had found Carde to be actively negligent. Carde

---

[21]In contending NASSCO should at "the very least" be required to indemnify Carde for 55 percent of the economic damages Carde is obligated to pay as a result of the accident, Carde implicitly acknowledges the parties' agreement did not obligate NASSCO to indemnify Carde for Carde's liability to plaintiffs caused by Carde's own negligence. In any event, we interpret the contract as not so obligating NASSCO.

contended NASSCO's negligence was primarily responsible for the accident; in the Bare Rental Agreement NASSCO agreed to indemnify Carde for injury "in any way caused by" NASSCO "occasioned by the use" of the crane; Employee's judgment came within such language; and the jury's finding of Carde's active negligence did not preclude enforcement of NASSCO's agreement to indemnify Carde. The court concluded since Carde was actively negligent NASSCO was not required to indemnify Carde for the amounts awarded to plaintiffs from Carde. In denying Carde's claim for indemnity, the court stated, "I feel precluded by the body of law that is extant now concerning indemnification from finding that there is a proportionate amount due on the indemnification agreement, and it is contrary to my sense of fairness that because a jury found one percent or 56/100ths percent or 20 percent as the case may be of negligence that, which was active on behalf of Carde, that this hold harmless section goes out the window, but I believe that it does. And so I am going to find that NASSCO has no duty to indemnify Carde."

The superior court essentially considered itself bound by the law emanating from *MacDonald & Kruse, Inc.* v. *San Jose Steel Co.* (1972) 29 Cal.App.3d 413, 420-421 [105 Cal.Rptr. 725], where the appellate court identified three classifications of contractual indemnity provisions. (*Id.* at pp. 419-421.) The indemnity clause at issue here—providing NASSCO would indemnify Carde for Carde's liabilities caused by NASSCO—was similar to the third class described in *MacDonald & Kruse, Inc.*: "The third type of contractual provision is that which provides that the indemnitor is to indemnify the indemnitee for the indemnitee's liabilities caused by the indemnitor, but which does not provide that the indemnitor is to indemnify the indemnitee for the indemnitee's liabilities that were caused by other than the indemnitor. Under this type of provision, any negligence on the part of the indemnitee, either active or passive, will bar indemnification against the indemnitor irrespective of whether the indemnitor may also have been a cause of the indemnitee's liability. [Citation.]" (*Id.* at p. 420.)[22]

In *MacDonald* v. *Kruse, Inc.* v. *San Jose Steel Co., supra,* 29 Cal.App.3d 413, the appellate court also stated, "when an indemnitor expressly promises to be responsible for the indemnitee's liabilities caused by the indemnitor,

[22]"In the contract between MacDonald and San Jose, San Jose expressly promised MacDonald that San Jose would hold MacDonald 'free and harmless from any . . . liability . . . caused by [San Jose], its agents or employees.' Since San Jose's promise did not purport to indemnify MacDonald for liabilities caused other than by San Jose, and since MacDonald's own negligence, whether active or passive, was also a cause of MacDonald's liability, MacDonald is not indemnified by San Jose under this provision. [Citation.]" (*MacDonald & Kruse, Inc.* v. *San Jose Steel Co., supra,* 29 Cal.App.3d at p. 421.)

but does not promise to be responsible for the indemnitee's liabilities caused by other than the indemnitor, the indemnitor will be held responsible for the indemnitee's liabilities that result 'solely' [citation] from the indemnitor's negligence, but will not be responsible for the indemnitee's liabilities where the indemnitee's 'negligence contributed to' the liability [citation]." (*Id.* at pp. 420-421.) Thus, under the analysis of *MacDonald & Kruse, Inc.*, the right to express contractual indemnity effectively becomes all or nothing.

2

Although noting the existence of decisions supporting each party's position, Carde contends the superior court should have enforced NASSCO's obligation to indemnify Carde for Carde's liability to plaintiffs arising from NASSCO's operation of the crane. We agree. Under case law arising after *MacDonald & Kruse, Inc.* v. *San Jose Steel Co., supra,* 29 Cal.App.3d 413, the court was not compelled to deny Carde's indemnity claim. Instead, noting that the classifications identified in *MacDonald & Kruse, Inc.* are not totally dispositive, those cases have applied well-established general principles of contract interpretation in determining indemnity obligations. Thus, despite an indemnitee's active negligence those principles may under appropriate circumstances necessitate a proportional indemnity analysis. We conclude the facts here warrant application of such analysis.

3

Although an indemnitee's active negligence may ordinarily preclude its recovery under a general indemnity agreement, the Supreme Court has cautioned against a strict application of such rule. (*Rossmoor Sanitation, Inc.* v. *Pylon, Inc.* (1975) 13 Cal.3d 622, 628, 632-633 [119 Cal.Rptr. 449, 532 P.2d 97].) The Supreme Court stated ". . . we do not employ the active-passive dichotomy as wholly dispositive of this or any other case." (*Id.* at p. 632.) The court further stated ". . . the question whether an indemnity agreement covers a given case turns primarily on contractual interpretation, and it is the intent of the parties as expressed in the agreement that should control. When the parties knowingly bargain for the protection at issue, the protection should be afforded. This requires an inquiry into the circumstances of the damage or injury and the language of the contract; of necessity, each case will turn on its own facts." (*Id.* at p. 633.)

In *Morton Thiokol, Inc.* v. *Metal Building Alteration Co.* (1987) 193 Cal.App.3d 1025 [238 Cal.Rptr. 722], the appellate court stated ". . . indemnity should be afforded under any circumstances where to do so furthers the manifest intent of the parties to the contract and where the loss sustained

would not have occurred without the indemnitor's negligence." (*Id.* at p. 1029.) The court concluded denying indemnity "would deprive the indemnitee of the benefit of its bargain and read out of the contract essential provisions intended by the parties to govern their relationship, in violation of the principle that contracts should be read in a manner which renders them reasonable and capable of being put into effect. [Citations.] In so concluding we are faithful to our high court's admonition in *Rossmoor Sanitation, Inc.* v. *Pylon, Inc., supra,* 13 Cal.3d 622 that the active-passive rubric ought not to be wholly dispositive, but that instead the enforceability of an indemnity agreement shall primarily turn upon a reasonable interpretation of the intent of the parties. [Citation.] Where, as here, the agreement clearly indicates that one party was to be indemnified for any damages sustained as a result of another's breach of the contract, and it is undisputed that the accident would never have happened except for such breach, we conclude that the indemnity is viable notwithstanding the jury's finding of the indemnitee's 'active' negligence." (*Morton Thiokol, Inc.* v. *Metal Building Alteration Co., supra,* 193 Cal.App.3d at p. 1030, fns. omitted.)[23]

Carde contends the law of indemnity in concurrent negligent cases is unsettled; mechanical application of the rules in *MacDonald & Kruse, Inc.* v. *San Jose Steel Co., supra,* 29 Cal.App.3d 413, is particularly inappropriate here since NASSCO's negligence far outweighed Carde's; and thus the applicable rules should be that the parties' intent controls, contract words are given their ordinary meaning, and despite its active negligence the indemnitee recovers where liability arises from precisely the contemplated risk

---

[23]Although acknowledging that the court in *Morton Thiokol, Inc.* v. *Metal Building Alteration Co., supra,* 193 Cal.App.3d 1025, concluded the indemnitor was obligated to indemnify the indemnitee under a general indemnity clause despite the indemnitee's active negligence, NASSCO contends such case is factually distinguishable. NASSCO notes in *Morton Thiokol, Inc.,* the indemnitor failed to perform its contractual obligation to take necessary safety precautions which would have prevented the accident regardless of the indemnitee's active negligence and the indemnitee sought indemnity on a claim directly resulting from the indemnitor's failure to discharge such contractual safety obligation. (*Id.* at p. 1029.) According to NASSCO, nothing in the parties' agreement here suggested NASSCO was obligated to indemnify Carde for Carde's active negligence in renting a crane without adequate safety equipment or warnings although Carde could have sought inclusion of that specific provision if it so desired. However, similar to the situation in *Morton Thiokol, Inc.,* the Bare Rental Agreement imposed safety obligations on NASSCO. The contract required NASSCO to inspect the crane before accepting it, to accept delivery only if the crane was safe for NASSCO's purposes, to maintain the crane in a safe condition, to furnish any equipment or accessories not included with the crane, and to employ only experienced reliable personnel to operate and maintain the equipment. Further, experienced crane user NASSCO was aware of and possessed the optional ATBD's assertedly constituting adequate safety equipment. NASSCO could have rented a crane from Carde equipped with an ATBD or provided an ATBD itself as contractually authorized but instead chose not to do so since it did not consider the crane to be rendered unsafe by its lack of an ATBD.

against which the indemnitee was promised protection. Carde asserts the contractual language here was intended to shield Carde from liability for accidents occurring while NASSCO had the crane. Carde further asserts nothing in the contractual language suggests the parties intended to deny Carde indemnity if Carde were found in any degree negligent. We agree.

Reasonably read, the contractual indemnity language here did not obligate NASSCO to indemnify Carde for Carde's own negligence. Neither could Carde reasonably expect to be indemnified for its own negligence. However, reasonably construed, the contractual language obligated NASSCO to indemnify Carde for the portion of Carde's liability attributable to NASSCO's fault. Such interpretation is consistent with Carde's reasonable expectation it would be indemnified for liability arising from the negligence of NASSCO. Thus, we conclude despite its 20 percent active negligence Carde was contractually entitled to indemnification from NASSCO for the portion of plaintiffs' joint and several economic damage award attributable to NASSCO's 55 percent negligence that is ultimately paid by Carde.

As a practical matter application here of a proportional indemnity analysis despite Carde's active negligence is facilitated by the jury's express findings on the percentage of negligence attributable to each party. Further, in light of such express apportionment of liability, the result here does not import the harm the court sought to avoid in *MacDonald & Kruse, Inc.* v. *San Jose Steel Co., supra,* 29 Cal.App.3d 413. We do not hold that indemnitor NASSCO is obligated to indemnify indemnitee Carde "for the indemnitee's liabilities that were caused by other than the indemnitor." (*Id.* at p. 420.) Neither do we hold that indemnitor NASSCO is responsible for indemnitee Carde's liabilities to which Carde's negligence contributed. (*Id.* at pp. 420-421.) On the contrary, we expressly hold that Carde is not entitled to indemnity from NASSCO for the portion of Carde's liability to plaintiffs attributable to Carde's negligence. However, consistent with the contractual language and the parties' intent, we also hold that to the extent Carde may ultimately pay any portion of its joint and several liability to plaintiffs attributable to NASSCO's negligence, Carde is entitled to indemnity from NASSCO. In essence, we simply enforce indemnitor NASSCO's express promise to be responsible for indemnitee Carde's "liabilities caused by the indemnitor . . . ." (*Id.* at p. 420.)

Finally, we emphasize that our conclusion enforcing the parties' indemnity agreement is based upon reasonable interpretation of the contract in light of its language, the circumstances of Employee's injury, and the parties' intent in accord with *Rossmoor Sanitation, Inc.* v. *Pylon, Inc., supra,*

13 Cal.3d 622, and *Morton Thiokol, Inc.* v. *Metal Building Alteration Co.*, *supra*, 193 Cal.App.3d 1025—cases decided after *MacDonald & Kruse, Inc.* v. *San Jose Steel Co.*, *supra*, 29 Cal.App.3d 413. However, although not specifically argued by the parties and not the basis of our decision, we observe the foundation of the holding in *MacDonald & Kruse, Inc.* appears substantially undercut by the subsequently evolving and presumably more equitable trend in statutory and case law toward allocating liability in proportion to comparative fault. (See, e.g., *Far West Financial Corp.* v. *D & S Co.* (1988) 46 Cal.3d 796 [251 Cal.Rptr. 202, 760 P.2d 399]; *Safeway Stores, Inc.* v. *Nest-Kart* (1978) 21 Cal.3d 322 [146 Cal.Rptr. 550, 579 P.2d 441]; *Daly* v. *General Motors Corp.* (1978) 20 Cal.3d 725 [144 Cal.Rptr. 380, 575 P.2d 1162]; *American Motorcycle Assn.* v. *Superior Court* (1978) 20 Cal.3d 578 [146 Cal.Rptr. 182, 578 P.2d 899]; *Li* v. *Yellow Cab Co.* (1975) 13 Cal.3d 804 [119 Cal.Rptr. 858, 532 P.2d 1226]; *County of San Mateo* v. *Berney* (1988) 199 Cal.App.3d 1489 [245 Cal.Rptr. 738]; *Lamberton* v. *Rhodes-Jamieson* (1988) 199 Cal.App.3d 748 [245 Cal.Rptr. 162]; § 1431.2, subd. (a).)

4

The portion of the judgment providing NASSCO was not required to indemnify Carde for amounts awarded plaintiffs from Carde must be reversed. The amount of NASSCO's indemnity obligation to Carde may be determined by the superior court.

D

*Badger's Appeal*

1

*Reduction of NASSCO's Recovery of Workers' Compensation Benefits*

(a)

NASSCO's complaint in intervention sought recovery from Carde and Badger of the total workers' compensation benefits NASSCO paid for Employee under the Longshore Act. Badger's cross-complaint effectively sought a declaration NASSCO's recovery of workers' compensation benefits paid to Employee should be reduced by NASSCO's percentage of comparative fault. In sustaining NASSCO's demurrer, the court concluded NASSCO's recoupment of such benefits was not subject to reduction for NASSCO's comparative negligence. The court granted NASSCO judgment

on its cross-complaint against Carde and Badger for the entire amount of such benefits.

■ Badger acknowledges under federal maritime and statutory law an employer which pays benefits to an injured employee under the Longshore Act may recoup the full amount of such benefits in an employee's third party action without reduction for the employer's percentage of fault. However, noting under California law an employer's recovery of benefits paid under the state workers' compensation scheme is reduced by the employer's fault percentage of law (*Witt* v. *Jackson, supra,* 57 Cal.2d 57; *Associated Construction & Engineering Co.* v. *Workers' Comp. Appeals Bd., supra,* 22 Cal.3d 829), Badger contends California should apply its reduction rule to non-maritime cases involving payment of Longshore Act workers' compensation benefits because federal law assertedly does not require California to apply the federal nonreduction rule in such cases.

In *Schreefel* v. *Okuly, supra,* 143 Cal.App.3d 818, we held an employer's recovery of workers' compensation benefits paid to an injured worker under the Longshore Act was not subject to a reduction proportionate to the employer's comparative fault. Seeking overruling of *Schreefel* as based upon asserted misinterpretation of applicable federal authority, Badger contends the judgment favoring NASSCO should be reversed on the comparative fault issue and modified to reduce NASSCO's recovery of Longshore Act workers' compensation benefits paid to Employee by the percentage of fault attributed to NASSCO. We decline Badger's invitation to overrule *Schreefel.*

(b)

In *Schreefel* v. *Okuly, supra,* 143 Cal.App.3d 818, a NASSCO employee was injured when his vehicle was struck by a train at a railroad crossing on NASSCO's parking lot and received benefits from NASSCO under the Longshore Act. Later NASSCO intervened in the employee's action against the train operator to recover such benefits. The trial court awarded NASSCO the full amount of benefits paid to the employee despite the jury's conclusion NASSCO's comparative negligence was 15 percent. Persuaded by supremacy considerations and the factors noted by the Supreme Court in declining to reduce employer recoupment by employer negligence in *Edmonds* v. *Compagnie Generale Transatl., supra,* 443 U.S. 256, we affirmed the trial court's ruling. (*Schreefel* v. *Okuly, supra,* 143 Cal.App.3d at p.

825.)[24] *Schreefel* was correctly decided. Contrary to Badger's suggestion, in *Schreefel* we did not conclude binding federal precedent necessarily compelled the result reached there. Indeed, we expressly noted there was "no binding authority from our highest court on the question [of comparative fault] as it affects nonmaritime cases under LHWCA." (*Id.* at p. 824.)

(c)

Finally, citing *Sun Ship, Inc.* v. *Pennsylvania* (1980) 447 U.S. 715 [65 L.Ed.2d 458, 100 S.Ct. 2432] and *Edmonds* v. *Compagnie Generale Transatl., supra,* 443 U.S. 256, Badger contends federal law leaves states free to apply their comparative fault rules to land-based injuries compensable under the Longshore Act but not under admiralty jurisdiction.[25] Badger also asserts the Longshore Act does not expressly prohibit a recoupment reduction based on the employer's comparative fault but instead simply protects the employer from liability to the vessel by barring claims against the employer for indemnity and contribution. (*Drake* v. *Raymark Industries, Inc.* (1st Cir. 1985) 772 F.2d 1007; *Dodge* v. *Mitsui Shintaku Ginko K.K. Tokyo, supra,* 528 F.2d 669.) Thus, according to Badger, federal law does not require that states apply existing federal admiralty and statutory principles to tort claims of an injured worker and his employer even if the employer seeks to recover benefits paid under the Longshore Act. However, as noted in *Schreefel* v.

---

[24]In *Schreefel* v. *Okuly, supra,* 143 Cal.App.3d 818, we stated "it seems clear application of California's comparative fault principle to reduce the employer's recoupment of the compensation paid, as in *Associated Construction & Engineering Co.* v. *Workers' Comp. Appeals Bd.* (1978) 22 Cal.3d 829, 842 [150 Cal.Rptr. 888, 587 P.2d 684], and *Aceves* v. *Regal Pale Brewing Co., supra,* 24 Cal.3d 502, 512 (see also *Witt* v. *Jackson, supra,* 57 Cal.2d 57), would frustrate this purpose of the LHWCA [to protect employers who are subjected to absolute liability by such Act] and would be similar to contribution contrary to the federal scheme. Since the compensation payments here are directly under the federal LHWCA which grants the employer a right to full recoupment, it seems clear application of California's comparative fault principle so as to reduce the recoupment would abridge 'substantive rights granted litigants under federal law.' [Citation.] Thus, unlike the situation . . . where compensation was paid under state law and the rights claimed by the employer were granted by state law, principles of supremacy do not permit use of the comparative fault concept in this case [citation]." (*Schreefel* v. *Okuly, supra,* at p. 825.)

[25]In *Sun Ship, Inc.* v. *Pennsylvania, supra,* 447 U.S. 715, the Supreme Court held ". . . a State may apply its workers' compensation scheme to land-based injuries that fall within the coverage of the" Longshore Act. (*Id.* at p. 716 [65 L.Ed.2d at p. 460].)

In *Edmonds* v. *Compagnie Generale Transatl., supra,* 443 U.S. 256, the Supreme Court stated: "Congress might have intended to adopt the existing maritime rules even for third-party actions under the Act that are not within the admiralty jurisdiction, though we need not and do not reach that issue today." (*Id.* at p. 273 [61 L.Ed.2d at p. 535].) The court also stated: "Of course, our decision does not necessarily have any effect on situations where the Act provides the workers' compensation scheme but the third-party action is not governed by principles of maritime law." (*Id.* at p. 272, fn. 31 [61 L.Ed.2d at p. 535].)

*Okuly, supra,* 143 Cal.App.3d 818, Badger's contentions might have some merit if Employee had received benefits under the state workers' compensation scheme. (*Id.* at p. 825.) However, Employee received Longshore Act benefits, not state benefits. Further, as discussed above, principles of supremacy and the considerations noted in *Edmonds* are persuasive in reaching a determination NASSCO's recoupment of Longshore Act benefits should not be reduced by NASSCO's comparative fault. (*Ibid.*) Moreover, *Sun Ship, Inc.* v. *Pennsylvania, supra,* 447 U.S. 715, relied upon by Badger, does not compel a reduction of an employer's recovery of Longshore Act benefits in a nonmaritime case in proportion to the employer's fault. Instead, in that case the Supreme Court simply held the jurisdiction of the Longshore Act and state workers' compensation law for onshore accidents was concurrent and the injured worker could elect under which system to seek compensation. (*Id.* at pp. 720-722 [65 L.Ed.2d at pp. 463-464.) The court did not suggest state law governed Longshore Act claims under the circumstances here. Indeed, to the contrary, the court stated: "When laborers file claims under the LHWCA, they are compensated under federal standards." (*Id.* at p. 724 [65 L.Ed.2d at pp. 465].)

(d)

In sum, we conclude the trial court correctly determined NASSCO was entitled to recoup from Badger (and Carde) the entirety of the Longshore Act benefits paid to Employee without reduction for NASSCO's comparative fault.

The portions of the judgment awarding NASSCO the full amount of Longshore Act workers' compensation benefits paid to Employee and dismissing Badger's cross-complaint against NASSCO must be affirmed.

2

*Substantial Evidence Badger Was Liable to Plaintiffs*

 Contending the record lacked substantial evidence to support a finding it was causally negligent, Badger seeks reversal of the judgment favoring plaintiffs against Badger and entry of judgment in Badger's favor notwithstanding the verdict. We conclude substantial evidence supported the jury's finding Badger negligently caused plaintiffs injury.

(a)

Plaintiffs proceeded against Badger on a negligence theory for Badger's not equipping the crane with an ATBD, not giving adequate warning of the

danger of operating the crane without an ATBD, and not conducting an adequate retrofit campaign after beginning to equip its new cranes with ATBD's as standard equipment. Plaintiffs also proceeded against Badger on a strict liability theory for design defect and failure to warn. In finding the crane did not have any design defect, the jury rejected plaintiffs' strict liability claim. However, the jury found Badger negligently injured plaintiffs.

Badger contends on this record—where the jury determined the crane was not defective and evidence established crane owner Carde and crane user NASSCO knew of the hazard of two-blocking and the absence of an ATBD—the trial court erred in concluding Badger was negligent in not informing NASSCO that Badger furnished ATBD's as standard equipment on later manufactured cranes. Citing *Jiminez* v. *Sears, Roebuck & Co.* (1971) 4 Cal.3d 379, 382 [93 Cal.Rptr. 769, 482 P.2d 681, 52 A.L.R.3d 92], and *Montez* v. *Ford Motor Co.* (1980) 101 Cal.App.3d 315 [161 Cal.Rptr. 578], Badger also characterizes the jury's finding Badger was negligent as fatally inconsistent with the jury's finding the crane was not defective when it left Badger's possession without an ATBD. However, on this record the jury's finding the crane had no design defect did not preclude a finding Badger was nonetheless negligent. (*Hasson* v. *Ford Motor Co.* (1977) 19 Cal.3d 530, 540-544 [138 Cal.Rptr. 705, 564 P.2d 857, 99 A.L.R.3d 158]; *Lunghi* v. *Clark Equipment Co.* (1984) 153 Cal.App.3d 485, 494 [200 Cal.Rptr. 387].) Further, Badger effectively seeks improper reweighing on appeal of conflicting evidence presented at trial bearing on its negligence.

(b)

Failure to conduct an adequate retrofit campaign may constitute negligence apart from the issue of defective design. (*Lunghi* v. *Clark Equipment Co., supra,* 153 Cal.App.3d at p. 494.) In *Lunghi,* the appellate court stated ". . . appellants presented evidence on negligence quite apart from the design issue, pertaining to the 'retrofit campaign.' This was Clark's efforts to notify owners of the Bobcat (and the failure to notify the owner of the Bobcat involved in the instant case) about the dangerous propensities of the machine discovered after the machine had been on the market for awhile, and the availability of safety devices which the manufacturer would install. [¶] Even if, properly instructed, the jury had found that none of the mechanical design features in issue . . . constituted a defect, it could still have found that Clark's knowledge of the injuries caused by these features imposed a *duty to warn* of the danger, and/or a *duty to conduct an adequate retrofit campaign.* A finding that Clark had not met the standard of reasonable care with regard to either of these duties would have had some support

in the evidence, and would have been consistent with a finding that the product's design was not defective." (*Ibid.*, italics in original; see also *Balido* v. *Improved Machinery, Inc.* (1972) 29 Cal.App.3d 633, 649 [105 Cal.Rptr. 890].)[26] This record supports a finding Badger breached its duty to conduct an adequate retrofit campaign.

Based upon substantial evidence the jury could properly conclude Badger did not do "everything reasonably within its power to prevent injury" to plaintiffs. (*Balido* v. *Improved Machinery, Inc.*, *supra*, 29 Cal.App.3d at p. 649.) In 1981 when Badger sold Carde the crane, Badger did not equip its cranes with ATBD's. Instead ATBD's were an option. In 1988 Badger decided to equip all new cranes sold with ATBD's. However, Badger decided not to try to retrofit with ATBD's cranes it had already sold or notify owners of previously sold cranes about its decision to make ATBD's standard equipment. Such evidence was sufficient to support the jury's finding of Badger's negligence based on its failure to take adequate steps to retrofit with ATBD's cranes sold before 1988. (*Ibid.*; see also *Lunghi* v. *Clark Equipment Co.*, *supra*, 153 Cal.App.3d at p. 494.)

(c)

As noted, the jury's finding of negligence based upon failure to conduct an adequate retrofit campaign may be reconciled with the jury's finding there was no design defect in the crane. (*Hasson* v. *Ford Motor Co.*, *supra*, 19 Cal.3d at pp. 540-544; *Lunghi* v. *Clark Equipment Co.*, *supra*, 153 Cal.App.3d at p. 494.) In *Hasson* the Supreme Court rejected the defendant's contention there was a fatal inconsistency between the jury's special finding the product was not defective at the time of manufacture/sale and the jury's special finding of negligence supporting the general verdict for plaintiffs. (*Hasson* v. *Ford Motor Co.*, *supra*, 19 Cal.3d at pp. 540-541.) Here the jury heard evidence when Badger sold the crane in 1981 industry standards did not require ATBD's as standard equipment. Thus, the jury could properly conclude the crane was not defective in 1981. However, the jury could nonetheless find Badger was negligent when upon determining ATBD's should be installed on all its new cranes it did not adequately seek to retrofit with an ATBD the crane ultimately injuring Employee.

---

[26]In *Balido* v. *Improved Machinery, Inc.*, *supra*, 29 Cal.App.3d 633, the court concluded a jury could reasonably have found negligence based upon failure to retrofit by the manufacturer of equipment determined to be unsafe after it was sold even though the manufacturer told the equipment's owners of the safety problems and offered to correct those problems for $500. (*Id.* at p. 649.)

(d)

Citing *Hasson* v. *Ford Motor Co., supra*, 19 Cal.3d 530, Badger acknowledges a jury's special finding of no product defect is not necessarily inconsistent with a finding of negligence. Nonetheless, Badger asserts without a finding here of negligent failure to warn, harmonizing the apparently inconsistent findings of negligence and defect would be impossible. However, Badger overlooks plaintiffs' negligence theory based upon Badger's failure to conduct an adequate retrofit campaign. (*Lunghi* v. *Clark Equipment Co., supra*, 153 Cal.App.3d at p. 494; *Balido* v. *Improved Machinery, Inc., supra*, 29 Cal.App.3d at p. 649.)

Further, *Jiminez* v. *Sears, Roebuck & Co., supra*, 4 Cal.3d 379, does not help Badger. Indeed, Badger acknowledges in *Jiminez* the court noted a plaintiff in a products liability action may proceed on alternative theories of strict tort liability and negligence. (*Id.* at p. 382.) In *Jiminez* the appealing defendants contended ". . . in a products liability case the plaintiff in order to recover in strict liability in tort must prove that he was injured by a defect in the product and that the product was defective when it left the hands of the retailer or manufacturer; whereas to recover in negligence the plaintiff must prove the same two elements plus an additional element, namely, that the defect in the product was due to negligence of the defendant." (*Id.* at p. 383.) However, in affirming the order granting plaintiff's motion for new trial, the Supreme Court in *Jiminez* stated: "Although seemingly it would always be simpler for a plaintiff in a products case to recover under a theory of strict liability in tort where only two of the three elements of the negligence cause of action are necessary of proof, this is not necessarily true, and in some situations it will be to the plaintiff's advantage to have negligence instructions." (*Ibid.*)

Also misplaced is Badger's reliance on *Montez* v. *Ford Motor Co., supra*, 101 Cal.App.3d 315.[27] Badger characterizes *Montez* as holding that ". . . in a products liability action involving a manufacturing defect only (with no

---

[27]In *Montez* v. *Ford Motor Co., supra*, 101 Cal.App.3d 315 we noted ". . . where the facts do not involve res ipsa loquitur and liability hinges on the manufacturing defect only, as are the facts in the present case, strict products liability is a shortcut to any recovery that might be based on negligence [citation]. Unlike *Jiminez* [v. *Sears, Roebuck & Co., supra*, 4 Cal.3d 379], with its different facts and different theories of recovery, liability here either in strict liability or in negligence was required to be congruent." (*Id.* at p. 319.) Noting the plaintiff in *Montez* conceded res ipsa loquitur did not apply, we stated: "The sole issue turned on the alleged defect in the steering assembly of the vehicle. Plaintiff's evidence on her negligence theories focused on the breach of defendant's duty of care in the manufacture and assembly of the vehicle and its failure to detect and remedy the defect in response to owner-warranty complaints and inspections. Unlike *Jiminez*, a jury determination of the nonexistence of any

claim of *res ipsa loquitur*), it is sufficient to instruct the jury only on strict liability, because a jury determination of no product defect precludes a finding of negligence." However, *Montez* involved not a design defect (as alleged here) but instead a manufacturing defect, defined as one where a " '. . . product . . . differs from the manufacturer's intended result or from other ostensibly identical units of the same product line. For example, when a product comes off the assembly line in a substandard condition it has incurred a manufacturing defect. [Citation.]' [Citations.]" (*Montez* v. *Ford Motor Co., supra,* 101 Cal.App.3d at p. 321.) Strict liability based upon design defect involves different factors than strict liability based on manufacturing defect. (*Ibid.*; see also *Anderson* v. *Owens-Corning Fiberglas Corp.* (1991) 53 Cal.3d 987, 995 [281 Cal.Rptr. 528, 810 P.2d 549].)[28] Unlike *Montez* this case did not involve a manufacturing defect as Badger intended the crane to be produced without an ATBD. Thus, unlike the situation in *Montez,* the jury's finding here of no (design) defect was not inconsistent with its finding of negligence.

(e)

Finally, Badger seeks to avoid liability for negligence by pointing to evidence suggesting fault lay with Carde for not requesting the optional ATBD offered by Badger despite knowing of the hazards of two-blocking and with NASSCO for not requiring ATBD's although equipping some of its cranes with such devices while also knowing the hazards of two-blocking. With regard to retrofitting, Badger contends Carde knew ATBD's had become standard equipment on new Badger cranes and were available but would not have put an ATBD on the crane even if recommended by Badger or requested by NASSCO. Badger further asserts although industry standards adopted after its 1981 crane was manufactured and sold required installation of ATBD's on that type of crane, such standards did not require retrofitting existing cranes lacking such devices. However, Badger essentially seeks to reargue on appeal the weight of conflicting evidence at trial bearing on the parties' comparative fault.

■ Compliance with regulations, directives or trade custom does not necessarily eliminate negligence but instead simply constitutes evidence for

---

defect was fatal to the theory of recovery based on negligence or on strict liability. [Citations.]" (*Id.* at pp. 319-320.)

[28]The Supreme Court has "set out two alternative tests for identifying a design defect: first, whether the product performed as safely as an ordinary consumer would expect when used in an intended and reasonably foreseeable manner and, second, whether on balance the benefits of the challenged design outweighed the risk of danger inherent in the design." (*Anderson* v. *Owens-Corning Fiberglas Corp., supra,* 53 Cal.3d at p. 995.)

jury consideration with other facts and circumstances. (*Stevens* v. *Parke, Davis & Co.* (1973) 9 Cal.3d 51, 65 [107 Cal.Rptr. 45, 507 P.2d 653, 94 A.L.R.3d 1059]; *Varas* v. *Barco Mfg. Co.* (1962) 205 Cal.App.2d 246, 258 [22 Cal.Rptr. 737]; *Square Deal Mach. Co.* v. *Garrett Corp.* (1954) 128 Cal.App.2d 286, 292-293 [275 P.2d 46, 52 A.L.R.2d 893].) ■ Further, Badger knew of the danger of two-blocking and the foreseeable possibility of a serious accident. Badger's president knew an ATBD could be used as a safety aid to a good operator and would work if properly maintained. In 1988 Badger made ATBD's standard equipment on all its newly manufactured cranes. The jury could reasonably infer retrofitting the crane with an ATBD could have prevented the accident.[29] Nonetheless, Badger did not seek to conduct an adequate retrofitting campaign or communicate to owners of previously sold cranes its decision to make ATBD's standard equipment. Determination of negligence focuses on due care and the reasonableness of the defendant's conduct. (*Anderson* v. *Owens-Corning Fiberglas Corp., supra*, 53 Cal.3d at pp. 1002-1003; *Finn* v. *G.D. Searle & Co.* (1984) 35 Cal.3d 691, 700 [200 Cal.Rptr. 870, 677 P.2d 1147].)[30] The question whether Badger breached its duty of due care was for the jury. (*Putensen* v. *Clay Adams, Inc.* (1970) 12 Cal.App.3d 1062, 1077 [91 Cal.Rptr. 319].) On this record the jury properly concluded Badger acted unreasonably and caused plaintiffs injury.[31]

(f)

In sum, substantial evidence supported a finding Badger's negligence in not seeking to retrofit the crane was a cause of the injuries to plaintiffs. Thus, the portion of the judgment favoring plaintiffs against Badger must be affirmed.

---

[29]Indeed, other crane manufacturers announced new safety features and practices or published retrofit notices.

[30]We note the mere fact the risk of two-blocking may have been obvious to NASSCO, Carde or Employee would not preclude Badger's liability for negligence. (*Pike* v. *Frank G. Hough Co.* (1970) 2 Cal.3d 465, 474 [85 Cal.Rptr. 629, 467 P.2d 229].) " '. . . [T]he bottom does not logically drop out of a negligence case against the maker when it is shown that the purchaser knew of the dangerous condition. . . .' " (*Ibid.*)

[31]In light of our conclusion substantial evidence supported the jury's finding Badger negligently caused plaintiffs injury by not conducting an adequate retrofitting campaign, we need not reach plaintiffs' contentions the negligence finding was also proper on the grounds of Badger's negligently failing to equip the crane with an ATBD, failing to warn of the dangers of operating the crane without an ATBD, not advising plaintiffs that other crane manufacturers provided ATBD's as standard equipment, and not advising plaintiffs that ATBD's had become mandatory equipment on new Badger cranes.

## DISPOSITION

The portion of the judgment declaring NASSCO was not obligated to indemnify Carde is reversed. The superior court may entertain further proceedings to determine the amount of NASSCO's indemnity obligation to Carde. The remainder of the judgment is affirmed. Carde is entitled to costs on appeal from plaintiffs and NASSCO. The parties shall otherwise bear their own costs on appeal.

Work, J., and Benke, J., concurred.

The petitions of all appellants for review by the Supreme Court were denied January 5, 1995. Kennard, J., and Baxter, J., were of the opinion that the petitions should be granted.